By the Court.
The first fact to be determined by the jury is, whether there existed a plain evident necessity, obliging the master to borrow money for repairs, provisions, &c. in order that he might prosecute his voyage. The proof on this head depends chiefly on captain Foster, of whose credibility the jury are the exclusive judges. He swears to the ship being detained at Rotterdam by an embargo, and the great need he stood in of money for necessary repairs, provisions, and seamen’s wages; that the 180I. 7s. 6d. sterling was fully expended on the vessel; and without that sum, he could not have prosecuted his voyage to London. The plaintiffs were bound to see, that the master had absolute occasion for the money for necessary repairs, and that the owner had no goods on board whereby the money might be raised: but if such occasion really existed, it could’ not be expected that they should inform themselves of the state of the accounts between him and his owner; because, on this head, all they could collect must necessarily be from the master. ■
So imperfectly is the settled account stated, that we cannot now conclude how the balance stood on the 31st August 1795, nor when the freight was paid to the captain, or paid over to George Barclay and Co.
It is worthy of observation, that Foster had a lien on the ■goods for their freight from Liverpool to Rotterdam, and as the contrary does not appear, we must presume that it was paid in the common course of trade, on the delivery of the cargo. Howard, one of the plaintiffs, was the supercargo, and bound for the payment of the freight. From this peculiar character, it must naturally have occurred to him, when the master applied to him for cash, to inquire what had become of the freight money. The 5251. had not been remitted to the defendant’s agents in London on the 15th August 1795; for of this they complain in their letter. And it would seem strange, either that the captain *should borrow money for repairs, when he had this p sum in his hands belonging to his owner; or remit the [*137 cash, while he was so greatly in need of specie for his vessel. In this view, the plaintiffs cannot be considered as mere strangers to Foster’s transactions.
A maritime question has been made at the bar, that though a master may in case of necessity hypothecate this vessel abroad for repairs, yet that he cannot in such case borrow money on the credit of his owner, and charge them personally thereby.
It must be admitted, that the law formerly was, as is stated by the defendant’s counsel; and so we held in 1792, in the case cited, But the late determinations have effected a variation in *137 this particular. The power of the master of a ship to take money on hypothecation for necessaries for a ship while she is on the voyage, is said to be highly necessary,-and that convenience requires it. Per Ld. Chief Justice Kenyon. 3 Term Rep. 269. The power of stipulating an extraordinary profit to loaners of money in foreign ports, in cases of great need, depending on the event of the vessel’s safe arrival, seems well adapted to every exigency. But hypothecations at exorbitant rates of interest are certainly more disadvantageous to ship owners, than borrowing reasonable sums in parts abroad, on the credit of the owners, at the common rate of interest. To charge the owners in the latter mode, the occasion of borrowing should be clear and manifest, and the sums not extravagant, and the transaction to be consistent with the most perfect good faith.
If the Sophia was sold in London, at an increased price, on account of the money expended on her in Rotterdam, it is a very equitable consideration on the part of the plaintiffs ; and yet if the money was advanced on Foster’s credit, Crawford was not bound thereby. The case comes before us for decision, very imperfectly in point of proof. Why was not the bill of exchange duly sent forward to London, and offered for payment ? It would have led to immediate inquiries, which would have determined with certainty, the necessity and occasion of taking up money at Rotterdam. Some suspicion must arise on this head; but let it not weigh more than it deserves. The court will only add, that while juries should entertain a jealousy of ship captains improperly running their owners in debt, in foreign parts, they should not be unmindful of those foreigners, who advance bona fide, their money for our merchants abroad, and thus promote our interests as a commercial people.
Verdict for the.defendant.