Parker, J.,
delivered the opinion of the Court.
The general principle that the owners of a ship are accountable for necessary repairs done upon her is well established, and the only question is as to the application of the principle in the case at bar. Owners are held accountable on two grounds. The first is when the repairs are made at the request of the master, who carries with him authority from the owners to contract for labor and supplies, which may be necessary to the safe prosecution of the voyage. For this purpose he may hypothecate the vessel in a for eign port; and having power to hypothecate, he may bind [ * 37 ] * the owners personally, instead of hypothecating. Indeed. it is settled that, if the master procures necessary repairs to be done without any express contract, an implied obligation arises, as well against the owners as against himself, to pay for such repairs, (a) But even this admits of the exception that, where there is a special promise by the master, the owner is not liable; and e conversa, where there is a special promise by the owners, the master is discharged from any obligation, (b)
The other ground on which the liability of a ship-owner rests is the advantage accruing to the property from the labor performed upon it. When a ship is repaired under the eye of the owner, there is an implied promise on his part to pay for the work; as there is against the owner of a house, that he will pay for re *41 pairs done upon it; the law in such cases presuming a request, if the owner suffers the work to proceed. But in these cases, it may be that the owner of a ship or house is not liable, in consequence of his having employed some person to procure the work to be done, to whom the workmen engaged themselves, and on whose credit they performed the work.
It results, therefore, that the obligation to pay rests upon the person to whom the credit is given. If the master employs the workmen, he is answerable, because of his contract; and the owner is answerable, because of his relation to the property, and the authority he is supposed to give the master. If no contract at all should he proved, but the work was proved to be done within the knowledge of the owner, he would be answerable, on account of the benefit he receives; and it would be presumed that the work was done at his instance and request. In the present case, it does not appear that the work for which the action is brought was done at the request of the master, or within the view of the owner ; but it was done at a distant port, at the instance of the merchant there to whom the ship was consigned.
There is no case which shows that a person to whom a ship is consigned can, by any act or contract of his, bind the owner of the ship, for any purpose different from that * which [ * 38 ] may be intrusted to him by the consignment. He is a factor, employed to sell and dispose of the cargo, and to procure a new one; and he is limited by the instructions which he receives from his principal. He cannot make his principal liable for any debt which he may incur in the prosecution of his agency, beyond the authority expressly given to him, or what results from necessity, or the usage of the place where he acts. If he applies to mechanics and laborers to work upon the ship, he is liable to them for their compensation, and he charges his disbursements to the account of his employer.
Still it is in the power of a merchant abroad to procure repairs to be done upon a ship consigned to him, without making himself liable for the expense, leaving the person employed to his remedy against the owner. This may be done by disclosing his principal, and stating expressly that he himself is not to be looked to for pay ment. In such a case, if it should appear that the work was necessary for the safety of the ship and the prosecution of the voyage, a duty would be imposed upon the owner to pay, which could be enforced by action at law.
But if the consignee should himself make the bargain for the work, without pretending to act as the agent of another in the contract, and the mechanic should trust to him altogether, it is difficult *42 to conceive how any contract, express or implied, can exist between the mechanic and the owner, (a)
The facts in the present case, so far from showing any expecta tian of charging the defendants as owners, prove that no such intention existed, until after a loss had accrued by the failure of the Russells, who were the consignees. They applied to the plaintiff to do the work ; and when it was done the bill was presented to them, and credited in their books in a running account with the plaintiff. They charged the defendants with the amount, as money paid by them, or for which they were liable; and before any demand by the plaintiff on the defendants, the Russells had paid to the plaintiff, by cash and their promissory notes, the whole [ * 39 ] * amount due to him, including the sum now attempted to be fixed on the defendants. It was not until the promissory notes were returned upon the plaintiff, that he appears to have entertained any thought of calling upon the defendants.
It is impossible to have stronger evidence of an intention originally to look to the Russells, who employed him, for the pay for his work. He never trusted to the credit of the defendants; and the resort to them is merely an after-thought, to repair the loss occasioned by the failure of the Russells. Under these circumstances, there could have been no contract with the defendants.
But admitting the defendants to have been equitably liable, on account of their relation to the property upon which the labor was performed, the subsequent transactions would certainly discharge them. The plaintiff had a legal demand against the Russells, for they employed him, and this he might have enforced against them: or by the laws of New York,'it seems, he had a remedy against the ship, which, if he had pursued, the defendants would have had notice of this demand, and might have paid it without suffering any loss. But instead of this, the plaintiff treats with the Russells as his debtor, giving no notice to the defendants; and the Russells in the mean time draw upon the defendants for the balance due them, including this very demand, and the defendants honor and pay the drafts.
The ground upon which it is expected to maintain this action is, that the owners of a ship are in all cases liable for repairs or work done upon her, and that, being so liable, no transactions with the consignee or agent, short of actual payment, will discharge them; and authorities have been cited to prove this legal liability, as well *43 as the continuance of it, notwithstanding any ineffectual attempts to procure payment from any other quarter.
This general doctrine is probably true ; and the question is only as to its application to the present demand. Where labor is performed upon a ship, or any other chattel, * the [ * 40 ] presumption would naturally and legally be that it was done, not only for the benefit, but at the request, of the owner; and an implied promise to pay would arise, which, in law, would charge the owner for a reasonable compensation for the work and labor performed.
But this implication of law may be avoided by showing that there was an express contract for the work and the compensation, or that the work was done upon the credit of another person, without any intention of resorting to the owners; in which case, if any remedy existed at all, it might be lost by such delay in calling upon the owner as would subject him to loss and inconvenience. A shipowner may have an agent or factor even in the place where he resides, to whom he may commit the management of his vessels; and if such person should employ mechanics to work upon the ships, who should trust to him, present their bills to him, be credited on his account, and make no demand upon his principal for an unreasonable length of time, so that a loss should happen by the failure of the agent, it could not be reasonable that recurrence should afterwards be had to the principal, upon a supposed liability tesulting from his being owner of the ship.
If this doctrine be just, as applied to an owner whose vessel undergoes repairs at home, it has a much stronger application to vessels abroad, (a) Generally, the merchant who sends his ship to a distant port, consigns or addresses her to some merchant there with whom he expects to have an account, and whose bills for disbursements and other expenses he is obliged to honor, without waiting to inquire whether the numerous bills from which the account is made up have been paid. It would be mischievous in the highest degree that merchants, before they accept bills, or otherwise make payments of accounts rendered by their factors abroad^ should suspend these operations until they received the vouchers of the several payments made by their consignees; yet this would bo the consequence of their liability to pay the various artisans who *44 [ *41 ] are usually employed * about a ship upon her return from a voyage, and who look to their immediate employers, and have the means of knowing their credit, and of coercing speedy payment if necessary.
Under such circumstances, we think there cannot be an implied promise of the owners of a ship to pay the persons who have been engaged in repairing her. Nor is'there any necessity for such an implication. For the artisan may always look directly to the person who employs him; and if he is not of sufficient credit, may refuse to do the work; or he may make his contract with the master of the ship, and then, by the law-merchant, he may have recourse to the owners, who are held to give a general authority to the master to bind them in all contracts necessary for the safe navigation of the vessel in the voyage which is undertaken. But the consignee has not such authority by the mere consignment of the vessel to him; at least the fact of his employing persons to work, without disclosing that he acts for the owners, and disavowing any personal obligation, will not create an obligation upon the owners residing in a distant port.
In the case at bar, the conduct of the plaintiff shows that he had no expectation of charging the owners here, until a loss had accrued in consequence of the credit given by him to the house in Neio York. He presented his bill to that house, suffered it to be credit ed in their general account with him, and made no demand upon the defendants until nearly six months had elapsed from the time the money was due him. In the mean time, a failure takes place; the defendants having been charged, in the account of their consignees, with the very account now sued for, and having paid their bills upon the belief that this bill had been adjusted and paid, in the usual course of business, by the party drawing upon them. These circumstances not only show that no reliance was originally placed upon the liability of the defendants, but also that [ *42 ] all equitable claim upon them had been * forfeited by the negligence of the plaintiff, upon the supposition that his demand upon the defendants was ever founded in law.
This leasoning shows that the plaintiff’s demand is not founded in law, and there is no necessity of considering the arguments of counsel upon the effect of the promissory notes received from the Russells by the plaintiff. The authorities cited on this point go to show that a debt actually existing is not extinguished, in the state of New York, by a promissory note, unless it is expressly received in satisfaction of the demand, (a) We think that no demand ever *45 existed against the defendants, either by express or implied contract ; and therefore that the transactions between the plaintiff and the jRussells, relative to the accounts between them, are wholly immaterial. The verdict must be set aside, and a general verdict entered for the defendants, and judgment accordingly.

а) Ex parte Bland, 2 Rose, 91. — Stewart vs. Hall, 2 Dow, 29. — Leonard vs. Huntington, 15 Johns. 298. — Marguard vs. Webb, 16 Johns. 89.— Scotia vs. Stanley, 1 Dall. 129. — Chapman vs. Durant, 10 Mass. Rep. 47.— Schemerhorn vs. Loines, 7 Johns. 311. —Muldon vs. Whitlock, 1 Cow. 290.

 Hussey vs. Allen, 6 Mass. Rep. 163. — Chapman vs. Durant, 10 Mass. Rep. 47. — Wainwright vs. Crawford, 3 Yeates, 131. — 4 Dallas, 225. — Farrell vs. M'Clea, 1 Dall 393.— Schemerhorn vs. Loines, 7 Johns. 811. — Marguard vs. Webb, 16 Johns. 89.— Mulden vs. Whetlock, 1 Cow. 290.— The Aurora, 1 Wheaton, 96.— Thom vs. Hicks, 7 Cow. 697.

 Hussey vs. Allen, 6 Mass. Rep. 163. — Muldon vs. Whitlock, 1 Cow. 299 — Ex parte Bland, 2 Rose, 91. — Stewart vs. Hall, 2 Dow, P. R. 29.— Cox vs. Reid, 1 Car & Payne, 602. — Reid vs. White, 5 Esp. 122

 For all national purposes embraced by the federal constitution, the states and the citizens thereof are one, united under the same sovereign authority, and governed by the same laws; but in all other respects they are foreign and independent of each other. — Buckner vs. Finley & Al. 2 Peters’s S. C. R. 586.—Duncan vs. Course, 1 S. C. — Const. Rep. 100. — Lonsdale vs. Brown, 2 Peters’s S. C. R , Appx. 688.— Hitchcock vs. Aiken, 1 Carnes, 460. — 3 Kent’s Com. 63. — Menetone vs. Gibbons, 3 T. R. 267, - Barbara, Chegwin, 4 Robin. 81.

 Chapman vs. Durant, 10 Mass. Rep. 47. — Scheme-horn vs. Loines, 7 Johns. 311 — Muldon vs. Whitlock, 1 Cow. 290