ELIZABETH MACY, adm'x, &c., of FREDERICK H. MACY *v.*
DAVID E. WHEELER.

The supreme court has the undoubted power and right to examine the evi-
dence at large, and upon the whole case, including the law and the facts,
to set aside a verdict and grant a new trial.

That court can, from the evidence, reach different conclusions of fact from
those found by the jury.  In reviewing trials, it has power to pass upon
questions of fact as well as law; whilst the court of appeals is confined
to the correction of errors of law only.

Having no power to review any questions of fact determined in the subordi-
nate courts, when a new trial is granted the court of appeals is obliged to
affirm the order, if it can stand consistently with any view to be taken of
the evidence given at the trial, where the trial has been by jury.

The legal and record title does not of itself decide the question of liability
for supplies furnished to a registered vessel.  The question is, to whom
was the credit given; and the law adjudges it to have been given to the
person in actual possession of the vessel, who controls her operations,
receives her freight and earnings, and directs her destination.

The defendant was the registered owner of a vessel, but he held the title
merely as trustee for P., the real owner; and had no interest in her earn-
ings, which belonged to P. or the persons to whom he transferred them.
The plaintiff furnished a set of sails for the vessel, upon the order of P.:
*Held*, that a verdict for the plaintiff could only be warranted by a finding,
1st. That the contract was not made with, and the credit given to, P.
exclusively; 2d. That the defendant was in actual possession of the vessel,
controlling her movements and interested in her voyage, and directing
what should be done with her, in all respects as her owner, when the sails
were furnished; or that he expressly authorized P. to contract for the
same on his responsibility.

*Appeal from an order of the Supreme Court granting a new
trial, with a stipulation for final judgment.*

THE action was to recover for a bill of sails furnished by
the plaintiff's intestate for the bark Peytona, of the value
of $552.23.   The sails were ordered by Antonio Pelletier,
in December, 1852, or January, 1853, and the defendant
claimed, in his answer, they were furnished on the credit
of Pelletier, the defendant not owning the vessel when they
were ordered and furnished.

The liability of the defendant was rested by the court,

at the trial, on two grounds: 1st. The jury were instructed that if the defendant was the actual owner and in the possession of and exercising the control of the vessel when the sails were furnished, he would be liable for their value; and 2d. He would be also liable if he expressly authorized Pelletier to contract for the sails on his responsibility. The evidence bearing on these points was substantially as follows:

The vessel was bought by Pelletier in November, 1852. On the 31st of December, 1852, he executed a bill of sale of eight-ninths of her to the defendant. This was recorded on the 4th of January, 1853. A bill of sale of the other ninth was executed to the defendant by Pelletier's order, by Babbridge & Valentine, to whom it had been previously conveyed by Pelletier, dated January 8, 1853, and recorded on the 29th of January, 1853. On the 28th of January, 1853, the defendant signed an agreement with Babbridge & Valentine to purchase of them all stores necessary to fit out the vessel for the voyage. On the 4th of February, 1853, the defendant took the usual oath of ownership of the vessel, at the custom house. On the 8th of February he signed an agreement employing the master of the bark. On the 28th of February, 1853, the defendant put in a claim, in admiralty, as the sole, true and *bona fide* owner of the Peytona. The evidence was all documentary, and these were all the facts tending to show that the defendant was in the possession of the vessel. None of the papers mention or refer in terms to his possession, and they were all subsequent to the contract for the sails, if the defendant's proof was to be credited. On the other hand it was proved by three witnesses that the defendant's actual relation to the bark was as follows: Pelletier owned the Peytona, and wished to make her one of a line of Australian packets. Babbridge & Valentine, ship chandlers in New York, made him advances to enable him to carry out this design, and took an absolute bill of sale of the whole ship for their own security. Pelletier quarrelled

with them, and made an arrangement with Overman & Grunn, by which the latter firm were to lend him money to pay Babbridge & Valentine, to advance what further sums should be necessary, and to hold the title to the ship as collateral security. As they were aliens, the defendant, who was a lawyer, and engaged in no commercial pursuits, allowed the title to be taken in his name, merely as trustee for them. Babbridge & Valentine would not consent to relinquish their right to supply stores for the voyage, and retained one-ninth of the vessel as security that Pelletier would buy of them; and when it was desired by Overman that the defendant should hold title to the whole, Babbridge & Valentine took an agreement of even date with the bill of sale to him, that the stores should be bought of them. Pelletier had the entire management and control of the bark, employed her captain, and gave him minute instructions in writing for the voyage, purchased her stores, and was advertised everywhere as her proprietor. The defendant never gave an order in relation to her, never received or claimed any part of her earnings, never issued any tickets, never saw the plaintiff's intestate, or knew of his furnishing sails until six months after they were delivered.

The fact was not disputed that Pelletier contracted for the sails. There was evidence on the part of the defendant tending to show that he ordered them about the 20th of December, 1852, and while Babbridge & Valentine were the registered owners of the vessel. On the contrary, the testimony of the plaintiff, Macy, tended to show that they were put on the vessel about the 30th of January, 1853, and had been ordered by Pelletier after the defendant acquired the registered title.

Affidavits of the plaintiff, Macy, were put in evidence, sworn to respectively June 30th and July 29th, 1853, in which he stated that the sails were supplied on Pelletier's credit, and to be paid for by his note at six months. Similar admissions were made to the defendant about the 30th of July, 1853.

There was no proof tending to show an actual authority to Pelletier from the defendant, to contract on his behalf for the sails, unless it be Pelletier's statement, as follows: "It was understood between Wheeler and me that I was to go on with the vessel and get her ready for sea." Directly afterwards he testified: "Wheeler had no interest in the vessel. * * * I made a contract with Macy for the sails. * * * I was to have the profits of the voyage when the bills were settled. * * * I was owner at the time.. I had the entire interest in the profits, and the entire interest in the vessel. * * * There was no arrangement between me and Wheeler. As far as I knew Wheeler merely held the Peytona in trust for Overman & Grunn. I had *exclusive* possession of the Peytona up to two days before she sailed." On the point of authority, the defendant testified explicitly: "I had no interest in the vessel. * * * I had not the possession. * * * I never authorized Pelletier to order a single thing."

When the plaintiff rested his case, the defendant moved to dismiss the complaint on the grounds: 1st. Because Wheeler, being the mere registered owner, is not liable for supplies furnished to his vessel simply on the ground of his registered ownership. 2d. There is nothing tending to prove that the sails were furnished on Wheeler's credit. 3d. Because Wheeler was not registered owner when the sails were furnished. 4th. Because there is no proof that the defendant was in possession of the vessel.

The judge said that, as the case stood, he must grant the motion, because there was no evidence to show Pelletier's authority to order the sails in question. The plaintiff then obtained leave to introduce further testimony, and called Pelletier. After the examination of Pelletier the motion was renewed on the same grounds, and denied, to which the defendant excepted.

The judge, in his charge, submitted two questions to the jury: 1st. Whether the defendant was the actual owner

and possessor of the vessel, and controlled her movements, directing what should be done with her in all respects as her owner, at the time the sails were furnished, and instructed them that if they should so find, then the sails came to his possession, and he would be liable for their value. To this there was no exception. 2d. Whether the defendant expressly authorized Pelletier to contract with the plaintiff for the sails on his responsibility; and if so, then the plaintiff was entitled to their verdict. This was not excepted to.

The jury found a verdict for the plaintiff. The supreme court, at special term, denied the motion for a new trial, and on appeal to the general term that order was reversed and a new trial ordered, with costs to abide the event.

From the last named order the plaintiff's administratrix appealed to this court, stipulating that if the order be affirmed, judgment absolute should be rendered against the appellant.

*C. N. Black*, for the plaintiff.

*E. P. Wheeler*, for the defendant.

WRIGHT, J. The only exception on the part of the defendant was to the refusal to non-suit at the close of the plaintiff's evidence. It was not, perhaps, error to decline to hold, on the proof then given, as matter of law, that the defendant had not such a beneficial ownership and possession of the vessel at the time the sails were contracted for and furnished as to render him responsible; or that the contract was made with, and the credit given to, Pelletier, and not to the defendant; or that Pelletier had no actual authority from the defendant to contract on his behalf for the sails. These were questions of fact. If the defendant was the merely legal and registered owner of the vessel, holding the title for himself as security or in trust for others, and not in point of fact in possession of and con-

trolling her, either as to her destination and employment, or the proceeds of it, he would not be liable. The legal and record title does not of itself decide the question of liability for supplies furnished to a registered vessel. The question is, to whom was the credit given; and the law adjudges it to have been given to the person in actual possession of the vessel, who controls her operations, receives her freight and earnings, and directs her destination. So, also, conceding the defendant to have been in possession and to have sustained such a relation to the vessel as owner as to be responsible for necessaries furnished for her use, if the contract for the sails was made with, and the credit given to, Pelletier, there was no foundation for the plaintiff's claim. And again, it was undisputed that Pelletier ordered the sails. He was not the master of the vessel, and had no implied authority as such to bind the defendant. He was a witness for the plaintiff, and testified that he was the owner. He was advertised as proprietor; and there was no evidence to connect him with the vessel, except as owner and proprietor. He was that or nothing. There was, therefore, no implied authority in him.

The further and remaining question was whether Pelletier was expressly authorized by the defendant to contract with the plaintiff for the sails on his responsibility. If he was without express authority, the defendant would not be bound. Even though the defendant were in possession of the vessel, and actually received the sails contracted for by Pelletier voluntarily, he would not be bound to account for them if there had been no previous request on his part. The rendition of services at the request of one party, beneficial to another, without a previous request from the latter, does not raise an implied promise on his part to pay for them.

It is thus seen that the liability of the defendant depended upon certain conclusions of fact, there being no controversy as to the law of the case, at least as far as the rights of the plaintiff were affected. The plaintiff had a verdict,

which could only have been warranted by a finding: 1st. That the contract was not made with, and the credit given to, Pelletier exclusively. 2d. That the defendant was in actual possession of the vessel, controlling and managing her movements, interested in her voyage, and directing what should be done with her in all respects as her owner, when the sails were furnished; or that he expressly authorized Pelletier to contract for the sails on his responsibility.

The supreme court had the undoubted power and right to examine the evidence at large, and upon the whole case, including the law and the facts, to set aside the verdict and grant a new trial. That court could, from the evidence, reach different conclusions of fact from those found by the jury. In reviewing trials, its power is to pass upon questions of fact as well as law, whilst this court is confined to the correction of errors of law only. Having no power to review any question of fact determined in the subordinate courts, when a new trial has been granted we are obliged to affirm the order if it can stand consistently with any view to be taken of the evidence given at the trial, where it has been by jury. (*Hoyt* v. *Thompson's Ex'r*, 19 N. Y. Rep. 207; *Sanford* v. *The Eighth Avenue Railroad Company*, 23 N. Y. Rep. 343.) We are in this position in the present case. The jury found certain facts, and predicated a verdict upon them. Upon an examination of the evidence at large, and upon the whole case, the supreme court has ordered a new trial. It has reached different conclusions of fact from those found by the jury; and an examination of the case shows that those conclusions are not wholly unsupported by the evidence. Indeed, such examination, instead of leading to the conclusion that the order granting a new trial is not to be justified by any view to be taken of the proof given, plainly shows that the plaintiff established a defense by the clear preponderance of testimony. The evidence tended strongly to show that the plaintiff contracted with Pelletier for the sails,

and upon his credit; that although the defendant held the legal title to the vessel, Pelletier was the equitable owner, in possession, controlling and managing her, directing her destination, and having the sole right to receive her freight and earnings; and that he ordered the sails on his own responsibility, irrespective of any actual authority from the defendant. It is enough, however, that the supreme court might have taken this view of the evidence.

As we are without power to review questions of fact determined in the subordinate courts, we have no recourse but to affirm the order granting a new trial. The plaintiff, instead of appealing from the order and stipulating for final judgment in case it should be affirmed, ought to have gone down to another trial. But we have no power to give the case that direction.

The order granting a new trial must be affirmed, and judgment absolute rendered against the appellant.

Mullin, J. This cause was tried by a jury, and a verdict rendered for the plaintiff. The defendant's counsel moved, at the special term, for a new trial, which motion was denied. On appeal to the general term this order was reversed, and a new trial granted. It was held, in *Sanford* v. *The Eighth Avenue Railroad Company* (23 N. Y. 343), that when the trial is by jury we have no power, under the existing rules of law, to review any question of fact determined in the subordinate courts. In this case, therefore, we should be obliged to affirm the order granting a new trial if that order could stand consistently with any view to be taken of the evidence given at the trial.

In that case I infer that no questions of law were involved; that the motion for the new trial was made on the facts only. In this case there are questions of law as well as of fact, and we must examine both before we can reverse the order of the general term.

The defendant's counsel objected to evidence offered on

the trial by the plaintiff in reference to the transactions between Pelletier and Babbridge & Valentine, and between Pelletier, Overman & Grunn and Wheeler, and his objections were over-ruled and the evidence was received. The evidence was competent, and therefore properly admitted. The questions for the jury to determine were, 1st: Was Wheeler owner and in possession of the vessel when the order for the sails was given by Pelletier? If he was owner, then, 2d. Was Pelletier his agent in ordering the property?

The defence denied even nominal ownership by the defendant when the sails were ordered, but insisted that Pelletier was the real owner, and the nominal title at that time was in Babbridge & Valentine. And that after the defendant obtained the nominal legal title, Overman & Grunn had an interest in the vessel, and in the liabilities existing against her. It was impossible to ascertain who was liable for supplies, without an inquiry into the transfer of and dealings concerning the ship by the several parties connected therewith. When the facts were all out it might be that many of them were irrelevant or otherwise incompetent, and should have been stricken out. No motion to strike out was made, and the defendant cannot now complain if such matters are now found in the case. It was impossible when the evidence was offered, for the court to separate the legal from the illegal, and it was his duty therefore to admit the whole, subject to the right of the counsel to move to strike out that which was illegal.

The defendant's counsel moved for a non-suit, which motion was denied. When the plaintiff rested the second time there was evidence sufficient to carry the case to the jury. The defendant was shown to be the legal owner; he had hired the captain, agreed to pay for supplies, and Pelletier had given evidence which might be construed as proof of authority from the defendant to him to order the sails from the plaintiff. It is true, much of this evidence related to a day subsequent to the order. But the bill of

sale of eight-ninths of the vessel from Pelletier to the defendant, bears date the 31st December, 1852, while the order for the sails was not given to the plaintiff until about the middle of January following. If the plaintiff was found to be owner from the 1st January, the other evidence in the case might justify a verdict for the plaintiff. It is sufficient for our present purpose that there was some evidence tending to prove the defendant liable.

If I am right in regard to these legal questions, it follows that the general term must have granted the new trial on the evidence; and I propose to inquire very briefly, whether within the rule laid down in *Sanford* v. *The Eighth Avenue Railroad Company*, cited supra, in any view of the evidence the order granting a new trial can stand.

While it is true that there is some evidence to support the verdict of the jury, it is equally true that a verdict for the defendant would have been not only justified, but if rendered, could not have been set aside as against the weight of evidence, or as unsupported by it.

It was indubitably established that Pelletier was the real owner of the vessel, both before and after the transfer to defendant; that the defendant had no interest in his or her earnings; and that they belonged to Pelletier, or those to whom he transferred them. Under these circumstances, the defendant was not liable for supplies, unless purchased by him, or by some person authorized by him. (Abbott on Shipping, 32; *Leonard* v. *Huntington*, 15 J. R. 298; *Wendover* v. *Hogeboom*, 7 J. R. 308; and cases cited in note to page 33 of Abbott on Shipping.)

When supplies are furnished to a ship, the person furnishing them has three remedies to which he may resort in order to collect the price. 1. He may enforce them against the ship. 2. Prosecute the owner or person in the actual possession and bound to furnish supplies; and 3. He may sue the person ordering them. If the vendor will not adopt the first of these three, an action must be brought against a party liable to him.

We have seen that mere ownership alone does not sub-
ject the owner to liability, and for very obvious reasons.
It is competent for the owner to charter the ship to another,
and while the person hiring is in possession and use of the
vessel there would be no justice in subjecting the owner
to liability. As well might the owner of a house be liable
for repairs or supplies while it is occupied by a tenant.
(*Cutler* v. *Thurlo*, 20 Maine, 217; Abbott on Shipping, 35
and note.)

The hirer is *pro hac vice* owner, and alone liable. (Cases
cited supra; *Sherman* v. *Fream*, 30 Barb. 478; 8 John.
Rep. 272.)

Upon the same principle it has been held that a purchaser
of a vessel, after his contract of purchase, and before the
title is actually transferred, is liable for supplies, if he is
in possession of her at the time, and the person in whom
the legal title is, is not liable. (*Hussey* v. *Allen*, 6 Mass.
163; *Portland Bank* v. *Stubbs*, id. 422; *Mulden* v. *Whit-
cock*, 1 Cowen, 290; 11 Mass. R. 34.)

The question is then brought down to this: Was the
defendant in the actual possession of the vessel at the time
the sails were ordered; or was Pelletier his agent, and as
such, authorized to bind the defendant? If the evidence
does not support either of these propositions, then the new
trial was properly granted.

There is some proof of possession, not of actual occupa-
tion by the defendant, but of acts of ownership after the
transfer to him by Babbridge & Valentine, but none as
early as the middle of January. The agreement between
B. & V. and the defendant for supplies, bears date the 28th
January, 1853. The bargain with the captain was on the
8th February. The defendant's claim to the vessel made
in the United States district court for the southern district
of New York, was sworn to on the 28th February. The
oath of ownership was taken on the 4th February. Aside
from these acts, there is no evidence that the defendant
had anything whatever to do with the ship. The learned

16

justice who tried this cause instructed the jury that they might take these facts into consideration in passing on the question whether the defendant was in the actual possession of the ship. The evidence was competent upon that question. But it was met, and I think overcome by the undisputed evidence of both the defendant and Pelletier, that the defendant was not in possesssion, and did not control the ship.

Upon the other proposition, whether Pelletier was authorized to bind the defendant for supplies, I think the evidence is still more unsatisfactory. The only evidence in support of it, is the statement of Pelletier that "after this transfer (that of the title to the defendant I suppose is meant), it was understood between the defendant and me that I was to go on with the vessel, and get her ready for sea." From this statement, the inference as already suggested, might be drawn, that he was thereafter acting as agent of the defendant; but the same witness repeatedly says that the defendant had no interest in the vessel or her earnings. This being so, it would be doing violence to language, to say that the witness intended to testify to an agency. On the contrary, he says that he ordered the sails, wanted credit, and offered his note, which the plaintiff refused.

The proof in the case establishes the liability of Pelletier for the property. He was the actual owner of the vessel, entitled to all her earnings, and was the only person who was interested in furnishing supplies. It was Pelletier who ordered the goods, whose responsibility was relied on, until he became insolvent, and then the attempt was made to make the defendant liable.

I think the new trial was properly granted, and, under the stipulation, judgment absolute rendered in favor of the defendant, with costs.

All the judges concurring, judgment affirmed.