## COURT OF APPEALS.

### WILLIAM H. KENZEL, respondent agt. EDWIN R. KIRK and others, appellants.

1. Where necessaries are purchased for the use of a vessel, by its master, and where the registry contains the names of the owners, with such person as master, such owners are *prima facie* liable for supplies, in the absence of any proof qualifying such master's authority.
2. In such case it rests with the defendants to establish a defense.
3. The proof that such vessel was "run on shares," is not of itself sufficient to discharge the owners from responsibility.
4. The real question is, who by the charter party *has sole possession, command and navigation of the ship?* This is always a question of fact, depending on the peculiar circumstances of each case. In many cases "running on shares," is a method of determining the amount of the master's compensation as such.
5. The numerous decisions reported from the courts of the eastern states on this subject, are based on the principle that the general owners are not liable, because they have let the *exclusive possession, command and navigation* of the ship, not to one as agent, but for the time *as owner*. In such lettings, the doctrine of agency has no application.
6. The hirer then, in all contracts for supplies, acts for himself, and upon his own responsibility and credit.
7. In all such cases, the share of freights paid to the owners by the hirer, is to be regarded as their charter money for the use of the vessel.
8. But where the general owners say to the captain, "we will give you a gross sum per month," or "we will give you one half her gross earnings to sail her

for us as captain, and you shall pay half of her disbursements, and find all her supplies," the owners are responsible for supplies to third persons ignorant of the arrangement, as in ordinary cases of masters purchasing supplies for vessels they command.

*December* 31, 1866.

THIS action was brought to recover against the general owners of a vessel, a bill of supplies furnished to the captain, who was sailing on shares.

The facts of the case are as follows: The defendants were general owners of the schooner Moonlight, and let her to Captain Rogers to run on shares. He was to provision, victual and man her, and to pay one-half of her disbursements, and was to receive no pay other than the half earnings. In September, 1856, after the schooner had been running some time under this arrangement, Captain Rogers took her to Elizabethport, N. J., and ordered the plaintiff who kept a store in Jersey City, to send supplies of beef, &c., to the vessel, to fit her for a voyage to Cuba, &c. The plaintiff furnished such supplies to the value of $296.88, and he was allowed to prove under defendants' objection, that he charged the account to "schooner Moonlight."

There was no evidence that the plaintiff had ever before furnished supplies to the schooner, and this was the first time that he had any dealings with Captain Rogers, but he knew several of the owners, and that at least one of them boarded in Hoboken, and had an office in West street, in New York, but made no inquiry from any of them as to Captain Rogers' authority to contract for them.

The plaintiff proved he had no knowledge that the captain was running her on shares.

It was further proven that the vessel had been originally built for Rogers to command her, under an understanding he was to do her business. He had been in the habit of buying supplies for the vessel in ports where the owners did not reside, for which they paid, and also of doing with the vessel as other captains did.

It also appeared that the vessel was registered in the names of the appellants as owners, with Rogers as master.

It further appeared that the owners dismissed the master on her trip out, at Key West, and took possession of their vessel and of a portion of the stores purchased of the plaintiff, which remained on the vessel unconsumed.

The defendants moved for a·dismissal of the complaint. This was denied ; defendants excepted.

The judge (SUTHERLAND, J.) left the case to the jury on this charge in substance, viz : " That in the absence of any notice to the plaintiff that the vessel was let on shares, or an opportunity by reasonable caution to ascertain the facts, the case presented would be the ordinary one of the master of a vessel buying goods and necessaries for. a vessel."

To this charge the defendants generally excepted.

The jury found a verdict for the plaintiff of $344.41.

The general term affirmed the judgment of the court below. (*See report in Barb. Rep. p* —.)

GEORGE F. BETTS, *for appellants.*

*First.* This precise case has been decided, and it is the duty of the court *stare decisis.* (*Webb* agt. *Pierce,* 1 *Curtis,* 104 ; *cited and approved* 18 *How.* 190, *and* 19 *How.* 30 ; *Stedman* agt. *Feidler.* 25 *Barb.* 618 ; *S. C. affirmed* 20 *N. Y. R.* 437 ; *Perry* agt. *Osborn,* 5 *Pick.* 422 ; *Cutler* agt. *Thurlo,* 20 *Maine,* 213 ; *Baker* agt. *Huckins,* 5 *Gray,* 596.)

*Second.* Plaintiff cannot recover unless the master to whom he furnished the supplies, was in fact the agent of the defendants in procuring them. (*Briggs* agt. *Wilkinson,* 7 *B & C.* 34 ; *Curling* agt. *Robertson,* 7 *Man. & G.* 336 ; *Mitchison* agt. *Oliver,* 5 *El. & Bl.* 419 ; 32 *Eng. L. and Eq. R.* 219 ; *Meyers* agt. *Willis,* 17 *Com. B.* 886 ; *Brodie* agt. *How.* 17 *Com. B.* 109 ; *Hackwood* agt. *Lyell,* 17 *Com. B.* 124 :*Mackenzie* agt. *Perley,* 11 *Exch.* 638.)

1. The general owners are not necessarily liable. Their general ownership, at the utmost, raises a presumption that the master acted as their agent in purchasing supplies, which presumption fails upon proof that some charterer, or

the master himself, was owner *pro hac vice*. (*Macy* agt. *Wheeler*, 3 *N. Y. R.* 231, *and cases cited under first point.*)

2. Such an agreement as is proven in this case, makes the master charterer and owner *pro hac vice*. (*Hallet* agt. *Columbian Ins. Co.* 8 *Johns.* 272 ; *Reynolds* agt. *Tappan*, 15 *Mass.* 370 ; *Taggard* agt. *Loring*, 16 *Mass.* 336 ; *Manter* agt. *Holmes*, 10 *Met.* 402 ; *Cutler* agt. *Windsor*, 6 *Pick.* 335 ; *Thompson* agt. *Snow*, 4 *Green.* 1, 264 ; *Sproat* agt. *Donnell*, 26 *Maine*, 185.)

*Third.* The want of notice to the material man, or of reasonable opportunity to ascertain by the exercise of prudence, who is owner *pro hac vice*, cannot affect the rights of the parties.

And the judge erred in this respect, in his charge to the jury.

1. None of the cases above cited, allude to such want of notice or opportunity, as the ground of a right of action.

Nor in those cases was such notice or opportunity proved as a defense.   The defense was deemed perfect by the court, without such proof.

2. The following cases expressly hold that such a question is immaterial :   *Brodie* agt. *Howard* (17 *C. B.* [84 *Eng. C. L. R.*] 109) ; *Mitcheson* agt. *Oliver* (5 *El. & Bl.* 419) ; *Stedman* agt. *Feidler* (25 *Barb.* 618) ; *affirmed on appeal* (20 *N. Y. R.* 437).

3. By the well settled principle of law, such a question is immaterial.

The case shows that no previous act of the defendants had induced plaintiff to regard Captain Rogers as their agent. It also shows, as well as the bill itself shows, that no credit was given to any particular individuals as owners, but merely to the " schooner Moonlight," and thus perhaps inferentially, to whoever was legally liable to pay her bills.   And the complaint shows that the names of the general owners were unknown, some being sued as John Doe and Richard Doe.

4. It was the duty of the judge to have charged that by the evidence of the plaintiff himself, he had a reasonable

opportunity to ascertain that the vessel was run on shares.

There being no dispute as to the facts, the law determined this to be a reasonable opportunity.

*Fourth.* The motion for a non-suit should have been granted.

The plaintiff had failed to make out a case, and there was no question to go to the jury.

The judge concedes in his charge that there was no question for the jury but that of notice or reasonable opportunity to ascertain whether the vessel was sailed on shares.

But it is submitted, that upon the grounds stated under the third point, that question should not have been left to the jury.

*Fifth.* There was error in admitting the evidence as to whom the charge was made by the plaintiff in his books.

The plaintiff is allowed here to prove an act done by himself, without instructions from the defendants, in their absence.

This is clearly irrelevant; it cannot avail to affect the defendants' rights, nor to strengthen the plaintiff's (*Cutler* agt. *Thurlo,* 20 *Maine,* 213).

But while immaterial, it was also calculated to influence and prejudice the jury, as it even affected the judge who delivered the opinion of the court.

*Sixth.* The captain had no authority to procure supplies in Jersey City, for his vessel at Elizabethport. That was not a port of necessity. The peculiarity of ordering supplies from Jersey City under such circumstances, should have put plaintiff upon inquiry as to Rogers' authority.

If such purchases be allowed, it is out of the power of owners to give such notice as the judge in his charge requires.

DENNIS McMAHON, *for respondent.*

*First.* The master of the ship is the confidential agent of the owners, and as such in general he appears to all the world in matters relating to the usual employment of the

vessel, and to the means of employing her; the business of fitting out, victualing and manning the ship in ports where the owners do not reside and have no established agent, and frequently also, even in the place of their own residence. His position, therefore, furnishes presumptive evidence of authority from the owners to act for them in those cases, liable indeed to be refuted by proof that they, or some other person for them, managed the concern in any particular instance, and that this fact was known to the particular creditor, or was of such general notoriety that he may reasonably be supposed not to have been ignorant of it; and the repairs and supplies, however, must be such as a prudent owner would have ordered or assented to if present. To this extent the master has power, it is insisted, to bind the owners personally, as well in the place where they reside, as abroad. (1 *Conklin's Ad. Pr. p.* 73, 2d ed; *Abbott on Shipping, part* 2, *chap.* 3, §§ 2 *and* 4; *Ship Fortitude,* 3 *Sum.* 228; *Patterson* agt. *Chalmers,* 7 *B. Monroe,* 595; *The Paragon, Ware's R.* 322; *Hardy* agt. *Sproul,* 29 *Maine* [16 *Shep.* 258]; *Webster* agt. *Lechamp,* 4 *Barn. & Ald. p.* 352.)

This principle is held by the court of appeals in 5 *Selden* (*p.* 235); *Provost* agt. *Patchin; Saxton* agt. *Reed; Lalor's Supplement to Hill and Denio* (*p.* 323).

*Second.* In the case at bar, the plaintiff's proof tended to show that he sold the goods (which were necessaries) at the request of the master, on the credit of the vessel. That he did not know that the vessel was run on shares. That the master who got the goods was to all appearances in charge and command of the vessel, to the same extent as other masters. That the vessel was built for him, and the master had ordered other repairs and supplies, which were paid for by the owners without their objection. No proof was introduced by the defendants that masters of such vessels usually run on shares (*Saxton* agt. *Reed, Lalor, p.* 330).

The learned judge below left the case to the jury on the distinction taken in *Conklin's Admiralty* (*vol.* 1, *p.* 73 2d ed.), and by all the other elementary writers. (*Rich* agt. *Coe,*

*Cowper*, 636 ; *Arthur* agt. *Schooner Cassius*, 2 *Story*, *pp.* 81 *and* 94.)

The jury found for plaintiffs, and if the above authorities are good law, then the finding is conclusive. The exception taken by the defendants *was to the whole charge*, and, therefore, was too general. If any part of the charge was good the exception was pointless. .

*Third.* The learned judge below was right in refusing to non-suit, because the motion went to the question of authority of William C. Rogers, the master, to bind the defendants for necessaries for the vessel, which was one mixed of law and fact, and that a master who ran on shares had no right to bind the owners for supplies for the vessel, yet the case at bar went beyond, and showed these further and additional facts on the question of authority, viz :

*(a)* That the schooner Moonlight was built for W. C. Rogers, as commander, by the owners.

*(b)* That Rogers was in the habit of ordering supplies and repairs for the vessel, which the owners paid for, and without their objection.

*(c)* That the disbursements were to be paid equally by the owners and the master, which made it a joint concern. The case in 1 *Curtis' R.* (*p.* 104), seems to turn on the fact that the material man knew of the universal custom at Belfast, Maine, to let such vessel on shares. (*See p.* 113.) In *Reeve* agt. *Davis* (1 *Adolph & Ellis*, 312), the case of *Rich* agt. *Coe* (*Cowper's R. p.* 636), is not referred to either by the counsel or the court.

*Fourth.* The defendants did not explain, by evidence or otherwise, what was meant by a "running on shares." For all that appeared in the case, the master had all the independent authority of other masters. The vessel was registered with the name of Wm. C. Rogers as master. To the world, therefore, he appeared as master. (*See observations of* BEARDSLEY, *J. on pages* 329, 330, *Lalor's Sup. to Hill & Denio.*) They had let the master in the uncontrolled operation of the vessel, sent him out into the world clothed with apparent authority, and because a loss ensued by his mis-

management, they seek to bring that consequence not on themselves, but on those who dealt with their agent in good faith, without notice of his restricted authority. We submit that it would be a subversion of well defined legal principles to say that the mere proof of running on shares, without bringing it home to the seller of the goods at the time of the sale, is to relieve them from the consequences of the master's action. Public policy and the true interests of commerce, demand that the rule herein contended for should be preserved. In *Witbeck* agt. *Schuyler* (31 *How. Pr. R. p.* 97, *opinion* 98 *and* 99), the question of authority in the agent is measured as to third parties not by what the principal actually gave the agent, but by what he allowed the agent to assume, and cites: see on this point *Bidenlac* agt. *Smith* (31 *N. Y. R. p.* 259); *Ship Nathaniel Hooper* (3 *Sum. R. p.* 543, *and opinion* 596).

*Fifth.* It is no objection that the vessel (the Moonlight) was not lying at Elizabethport at the time the supplies were got. (*Lalor's Sup. to Hill & Denio*, 324; *Provost* agt. *Patchin*, 5 *Seld.* 235; 7 *Price*, 592.)

She was in coterminous waters, and in the same state. She needed supplies. Were it an objection? The defense did not raise it on a motion for non-suit, or by way of a request to charge. He stated it only as a reason why the plaintiff's charge in the books should not be introduced. It was not an objection that went to the introduction of testimony, or to its effect when introduced.

*Sixth.* The case of *Stedman* agt. *Feidler* (25 *Barb. p.* 612), as affirmed in 20 *N. Y. R.*, 437, is not unfavorable to the respondent's case. On page 447 (20 *N. Y. R.*), it will be seen that the case was affirmed on the second ground stated on page 446, viz: that the authority for the part owner to bind his co-owner's (Hart's) estate for supplies, presumable because he was co-owner, was revoked by the death of Hart, and that Hart's administrator had no right to incur new responsibilities or liabilities in the running of the vessel after the death of his intestate, and thereby to bind the estate he represented. This was the only point really settled by the

court, which did not pass on the particular point claimed to be decided in the case in the general term (25 *Barb.* 612); but Judge ALLEN, who delivered the opinion in the court of appeals, on page 442 (20 *N. Y. R.*), speaks of cases analogous to the one now under consideration, and in effect says, that it is the law that the rights of third persons (*i. e.* material men) cannot be affected (unless notice is brought home to them) by any private agreement between an owner and a master, for the hiring of the entire ship, and he cites *Story* (§§ 297, 298, *on p.* 441). He also cites the authorities in this state. This is in accordance with the principle laid down in *Provost* agt. *Patchin* (5 *Seld. p.* 235).

PECKHAM, J. A *prima facie* case of liability was shown against the defendants, by proofs of the sale and delivery of the supplies to Rogers, as captain of the vessel. The fact that he was captain, gave him authority to bind the owners in the purchase of supplies, in the absence of any proof qualifying the relation of the parties (*Saxton* agt. *Reed, Lalor's Sup. to H. & D.* 323, *and cases cited*).

. It appeared on the trial that the vessel was registered in the name of the owners, with Rogers as captain. These facts being shown, it rested with the defendants to establish à defense. The defense attempted was, that Rogers was not the agent of the owners, but ran the vessel himself as commander and owner *pro tempore*. I think the testimony failed to sustain the defense ; at least it was not so clear that the defendants could call upon the court to non-suit the plaintiff on that ground. The defense insists that the mere fact that the vessel was run on shares, was sufficient to discharge the owners from responsibility, as it would prove that the captain was the owner *pro hac vice*, and not the parties who had hired the vessel to him. We cannot assent to that proposition. It cannot be sustained on principle or authority. The real question in all such cases is, who by the charter party has possession, command and navigation of the ship? a mere question of fact (3 *Kent's Com.* 138, 5th ed).

There is nothing in this testimony inconsistent with the

right of the owners to direct how and with what the vessel should be freighted, or at what rate of compensation or value, or when she should sail ; or inconsistent with their rights to entire control over her ; the division of her earnings being a mere mode of compensating the captain for his services as their agent. The owners took the vessel from the captain at Key West, before her voyage was completed, and told him to leave her, they receiving the residue of the supplies bought of the plaintiff, then remaining unused on the vessel. The captain, so far as appears, claimed no right to remain, but left, and never was again on board of her. There was no claim that the vessel had been chartered to the captain for any particular time. On such facts it is impossible to say as matter of law, that the captain was the owner for the time, and had possession and exclusive control of the ship. In the test cases in Massachusetts, relied on by the appellants, it is held that each case must depend upon its peculiar facts, as to whether the owner or the captain has possession, command and navigation of the ship.

In *Webb* agt. *Pierce* (1 *Curtis*, 104, *at* 108), the court say, whether the owners are liable for supplies furnished to the captains, depends on the facts of the particular case, though the vessel has been taken on shares. It is a question of fact, merely. *Saxton* agt. *Reed*, decides this case. There the vessel was " run on shares." The court properly held then that the effect of the arrangement was to provide a mode by which the master's compensation was to be determined.

It would not be profitable to critizise the numerous cases found in the reports of Massachusetts and other earlier states on this subject. Many are referred to in the cases already cited (*See Butler* agt. *Hockins*, 5 *Gray*, 595). They are all based on the same principle, viz : that the several owners are not liable when they have let the possession, command and navigation of the ship, not to one as agent, but for the time as owner, as much so as a tenant of a house is owner for his term. In such case the doctrine of agency has no application whatever. The hirer, then, in all contracts for supplies, acts for himself, and upon his own respon-

sibility and credit, as much as the tenant of a dwelling in the purchase of supplies for his family. (*See Macy agt. Wheeler*, 30 *N. Y.* 231; *Stedman agt. Feidler,* 20 *N. Y.* 437.)

When the hirer is the owner for the time, of the vessel run on shares, the facts will show that the master not only commands the vessel, and manages her trade and employment, but victuals and mans her, and the moiety of the gross freight is not retained by him simply as a compensation for his services, but the share paid to the owners is rather to be regarded as their charter money for the use of the vessel (1 *Curt.* 112).

While the hirer is the temporary owner, he of course has more power over the vessel, her trade and employment, than an ordinary captain. The facts of this case, so far as presented, show simply an employment of the captain to run the vessel, not a hiring of the vessel to him. If the owners had said to the captain, we will pay you $75 a month, or we will give you one-half of her gross earnings to sail her for us as captain, and you shall pay half of her disbursements, and find all her supplies, the responsibility of the owners for supplies to third persons, ignorant of the arrangement, would not have been changed.

The captain in this case testified at the trial that he " did on board of this vessel, and with regard to her business as captains generally do." He does not seem to have had, or to have claimed, any other authority or power in regard to her.

It would seem to be clear, therefore, that he never hired the vessel, either in the ordinary or in the legal sense of that phrase. He was simply an employee of the owners, and they remain liable for supplies.

There is no other question calling for discussion in the case. The fact that these supplies were purchased at a port other than where the vessel lay, is not presented, and should not be decided. It was not argued as a ground of non-suit, nor was the court requested to charge thereon. The charge was excepted to except in gross, and hence no part is presented for review.

The judgment is affirmed. Unanimously concurred in.