GARREY, Appellant, vs. STADLER, Respondent.

*November 27 — December 14, 1886.*

*Implied contract to pay consulting surgeon.*

A consulting surgeon who, at the request of the attending surgeon, rendered services to a patient with his consent, may recover from the patient, upon an implied promise, the value of such services, notwithstanding an agreement between the patient and the attending surgeon that the latter should pay for such services, if the consulting surgeon did not expressly or impliedly assent to such agreement.

APPEAL from the Circuit Court for *Marathon* County.

The case is sufficiently stated in the opinion. There was a verdict for the defendant, and from the judgment entered thereon the plaintiff appealed.

For the appellant there was a brief by *Crosby & Pink,* and oral argument by *Mr. Pink.* They cited 3 Wait's Act. & Def. 595; *McCrary v. Ruddick,* 33 Iowa, 521; *Shelton v. Johnson,* 40 id. 84; 2 Parsons on Cont. (5th ed.), 46, 58; *Phillips v. Jones,* 1 Ad. & El. 333; *Peacock v. Peacock,* 2 Campb. 45; *Waterman v. Gibson,* 5 La. Ann. 672; *James v. Bixby,* 11 Mass. 34; *Farmington Academy v. Allen,* 14 id. 172.

*C. F. Eldred,* for the respondent.

TAYLOR, J. The appellant, a physician and surgeon, brought his action against the respondent to recover for medical and surgical services performed for and upon the

person of the respondent. There is no controversy as to the fact that the services were performed by the appellant, and upon the person of the respondent, nor as to the value of such services. The respondent alleges, however, as a defense to the action, that at the time the services were rendered one Dr. Fleischer was his attending physician and surgeon, and that the appellant was called in for consultation with Dr. Fleischer and to aid and assist him in a surgical operation to be performed on the person of the defendant; and he further alleges that there was an existing contract between the respondent and Dr. Fleischer, by which contract Dr. Fleischer was to pay for any assistance or consulting physicians or surgeons he might need in properly treating the defendant in his then present sickness; that the appellant was called by Dr. Fleischer to attend the defendant and to assist in a surgical operation which was proper and necessary in treating the defendant; and insists that the appellant must look to Dr. Fleischer for his pay. There is not a particle of evidence in the case showing that the appellant had any knowledge of the existence of the alleged contract between the defendant and Dr. Fleischer at the time the appellant performed the services for which he demands pay from the defendant; and the evidence further shows that the appellant was called in for consultation and assistance first by Dr. Fleischer, with the knowledge and assent of the defendant, and that he was present at the surgical operation at the request of the defendant himself. Upon this evidence it seems to us that the court would have been justified in directing a verdict for the plaintiff.

If he was not entitled to have the court direct a verdict in his favor, he was clearly entitled to have the jury instructed as requested in the third instruction asked by him, viz.: "If a physician, at the request of an attending physician, renders surgical services to a patient, even if there be an agreement between the attending physician and the pa-

tient that he, the attending physician, shall pay the expense of the surgical services of the consulting physician, the latter, being ignorant of such agreement, is entitled to recover, under an implied contract, from the party to whom and for whom such services were rendered, what the same are reasonably worth." Instead of giving this instruction, or one in substance like it, the learned circuit judge submitted the case to the jury on the theory that, if the defendant himself had reasonable grounds for believing that the plaintiff was in the employ of Dr. Fleischer, and that the plaintiff so understood it, then he could not recover. This instruction is, in substance, that if the plaintiff and defendant had both reasonable grounds for believing that the plaintiff was in the employ of Dr. Fleischer when he performed the services for the defendant, then he could not recover. We think there was nothing in the evidence upon which this instruction could be based, so far as the plaintiff was concerned. There is nothing in the facts proven on the trial that tends to show that the plaintiff supposed he was in the employ of Dr. Fleischer. On the other hand, all the evidence tends to show that he understood that he was in the employ of the defendant, and that he had no reason for believing that he was in the employ of Dr. Fleischer. Whatever may have been the belief or understanding of the defendant on the subject, such belief could not release him from liability to the plaintiff for the services performed, in the absence of any evidence tending to show that the plaintiff had knowledge of the contract between him and Dr. Fleischer.

The case of *Shelton v. Johnson*, 40 Iowa, 84, is similar to the one at bar; but the facts set up in the answer, to which a demurrer was sustained in favor of the plaintiff, were more favorable to the defendant than the facts proved in the case at bar. In holding that the facts set out in the answer did not constitute a defense, the court say: "Where a party, knowingly and without objection, permits another

Garrey vs. Stadler.

to render service for him of any kind whatever, the law implies a promise to pay what the same is reasonably worth. If the plaintiff had been called to visit defendant by one having no pretext of agency or authority to do so, and defendant had, without objection, received the services of plaintiff, the law would imply a contract to pay for them. If this is the rule where no authority whatever is conferred, why is it not also the rule where a limited authority, such as that set forth in the answer, is conferred? The answer admits that Findley was authorized to call plaintiff to defendant's residence for the purpose of consultation. It alleges that the consultation was for the benefit of Findley, the attending physician, and was to be at his expense. It admits, also, that the plaintiff did not know of this arrangement between defendant and Findley. The understanding between the defendant and his attending physician introduced into the transaction an element unusual and exceptional, viz., that the consultation should be for the benefit, not of the invalid, but of the physician; and, as a consequence of this agreement, the promise which the law implies is shifted from the defendant to his physician. Now, as the effect of this agreement is to produce results unusual in their nature, the plaintiff ought not in justice to be bound by it, unless he had knowledge of it." In this case the answer showed that Findley, the attending physician, had been very much criticised for his treatment of the defendant and his family, in which two deaths had occurred while he was treating them, and that Findley proposed the calling in of the consulting physician at his own expense, for the purpose of showing that his practice was proper and not subject to such criticism; and for that reason the claim made by the defendant, that he should not be charged with the expense of the consultation, had a more plausible ground to support it than in the case at bar, where the evidence shows that calling in the services of the consulting physi-

cian was solely for the benefit, and necessary for the proper treatment, of the defendant.

A similar ruling was made in a case in the same court, in favor of the services of attorneys who were brought into the case at the request of one of the defendants, who was also an attorney and had agreed to defend the action and pay all attorney's fees. The defendants were all held liable to pay for the services of the assisting attorneys, on the ground that the services were performed for the defendants with their knowledge and consent, the assisting attorneys not knowing of the agreement existing between them and the attorney who was their co-defendant. See *McCrary v. Ruddick,* 33 Iowa, 521.

Whether the rule of liability be as broad as stated by the learned court in the first case above cited, it is certainly broad enough to cover all cases where the service is performed for the personal comfort or convenience of the party with his consent and without objection or notice that such service is to be paid for by some other person. As the law in such case implies a promise to pay what the service is reasonably worth on the part of the person for whom such service is performed, such implied promise must be overcome by evidence showing that the person performing the service knew that there was a different arrangement for the payment of such service, to which he expressly or impliedly assented.

This rule is peculiarly applicable to the service of a physician. We think we are justified in assuming that it is quite exceptional for the members of that profession to undertake the treatment of their patients on special contracts by which they are to be paid a sum in gross, and by which they bind themselves personally with their patients to pay for any needed assistance in the proper treatment of the case; and when such a case does occur in the profession, it is, as said by the learned court in the case above

cited, an unusual and exceptional case, and one of which another physician called in consultation or otherwise is not bound to inform himself before rendering the required service. If the exceptional contract is to bind the consulting or assisting physician, it must be brought to his knowledge before his services are accepted by the patient; otherwise it can have no weight in determining the liability of the patient to pay for the service performed by such physician. See, also, upon this subject, *James v. Bixby*, 11 Mass. 34, 36, and the other cases cited by the counsel for the appellant in their brief.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.