## Provost *against* Patchin.

The master of a vessel, as general agent for the owners, has authority, in a home port, to bind them by his contract for necessary repairs to the vessel, unless his power has been in some way suspended or restricted, and notice of such suspension or restriction is brought home to the creditor.

This action was brought in the recorder's court of the city of Buffalo, in May, 1849, and was tried before a referee.

---

See *Campbell* v. *Perkins*, 4 *Seld.*, 430; and *Story* v. *The New-York and Harlem Railroad Co.*, 2 *id.*, 86, note *a*.

It appeared upon the trial that the defendant, a resident of Buffalo, was during the year 1848 owner of one-half of the schooner "Billow," and in possession thereof. That the plaintiff was during the same time a sailmaker doing business in Buffalo; and that at several times between the 16th of February and the 24th of April, 1848, the plaintiff, at the request of one Mann, who was master of the schooner Billow, made repairs and furnished sails and rigging for use upon the schooner in her ordinary navigation. The referee upon this state of facts reported as due to the plaintiff $98.01, the whole amount claimed. The judgment entered upon this report was affirmed, on appeal, by the supreme court, whence the defendant again appealed to this court.

*Jared S. Torrance* for the appellant.

The judgment should be reversed for the reason that a master has no authority to bind the owner, relative to the repairs of the ship, in the port where the owner resides.

It is true, he is the agent of the owner to manage the ship, and can charge him for necessaries furnished for the use of the ship in a foreign port, but we submit that he is not such agent and cannot so charge him in a home port, or in a port where he resides. The owner has a right to be consulted as to the amount and nature of the repairs. And it would be establishing a dangerous principle, and very unreasonable, to allow the master to charge the owner, in the place where he has the supervision of his own concerns, without a special authority from the owner; and the authorities, both English and American, are to this effect. (2 *Adolph. & Ellis, N. S.*, 425, 431; 6 *Mees. & Welsby*, 138; *Abbott on Shipping*, 5 *Am. ed.*, 178, 179; *Story on Agency*, 119 and also 119, a; 3 *Kent's Com.*, 7th ed., 219, 220 *and notes*; 1 *Wash. C. C. R.*, 49; *Gilpin*, 456.)

And again, KENT says (3 *Kent's Com.*, 7th ed., 210, 211), "By the French ordinance of 1681, the master might

Provost *against* Patchin.

hypothecate the ship and freight, and sell the cargo to raise money for the necessities of the ship in the course of the voyage, but he could not charge the owners personally. The new code of commerce has followed the same regulation, and this is now the law of France and Holland; and the learned Grotius condemns the rule in the Roman law, making part owners personally liable for these pecuniary contracts of the master, as very improperly introduced, and as being equally contrary to natural equity and public utility."

Now, if this be good law, how much more unjust would it be to allow the master to bind the owner for repairs and necessaries furnished in the port of the residence of the owner, where he can attend to his own business, and has a right to be consulted, especially where no special authority or custom is shown warranting it. And ABBOTT (*Shipping*, 5 *Am. ed.*, 178), commenting on this principle, says: "Therefore, if the owner, or his personal agent, be at the port, or so near to it as to be reasonably expected to interfere personally, the master cannot pledge the owner's credit at all, but must leave it to him or his agent to do what is necessary," &c.

*I. T. Williams* for the respondent.

I. The captain of a vessel has full power to bind his owners for sails and repairs done and furnished for the vessel, at the port of the owner's residence. (*Curtis' Rights and Duties of Merchant Seamen*, 172.) That learned author says: "In the home port, the master's presumed power as agent for the owners, will bind them for all proper contracts for fitting out, victualing and repairing the ship, unless it shall be shown that the owners themselves or a ship's husband managed the vessel, and that the party contracting with the master was aware of this;" (*citing* 1 *Bell's Com.*, 413; *Abbot on Shipping*, 101; 16 *John.*, 89; 7 *John.*, 311; 1 *Cow.*, 290; 2 *Rose*, 91; 1 *Term R.*, 108; 2 *Stra.*, 816. *See also*

6 *Greenl.*, 220 ; *Story on Agency*, §§ 116, 161 ; *id.*, § 297
2 *Camp.*, 339 ; 4 *Barn. & Ald.*, 352 ; 6 *Eng. Com. L.*, 450 ;
3 *Kent*, 163.)

II. It is not essential upon a mere question of the owner's
liability, that the repairs, &c., should have been necessary.
This is essential only upon a question of lien or hypotheca-
tion, and never upon a mere question of agency. The
maritime authorities in proceedings *in rem* (and no proceed-
ings can be had *in rem* except in cases of lien), seem to hold
both that the repairs, &c., done at the request of the master,
should have been reasonably necessary, and that they should
have been done or furnished in a foreign port ; and of this
character are all the cases that can be found that favor the
doctrine advanced by the appellant, as well as all the *dicta*
either in the cases or text writers. It is believed that not a
single case can be found where upon the naked question of
the captain's power as the agent of the owners to bind them
for repairs or supplies, either the port at which they are
had, or their necessity, are essential except upon a question
of good faith on the part of the creditor ; and for this pur-
pose it is not denied that evidence upon the question of
necessity might be proper for the consideration of a jury, in
case collusion between the master and creditor were charged.

III. Whatever may be the doctrine of the maritime law,
by every analogy of the common law (and the rule of the
common law must govern the decision of this case) the
character, situation, duties and relations of the master of
a vessel furnish presumptive evidence of his authority to
bind his owners for repairs or supplies done to or furnished
for the vessel, whether in a home or foreign port. ( *Story
on Agency*, § 116 ; *id.*, § 294.)

IV. The defendant having received the benefit of the
contract, the presumption is that it was made at his order
and request. ( *Curtis' Rights and Duties of Merchant Seamen*,
173 ; *Stokes* v. *Carne*, 2 *Camp.*, 339.)

Provost *against* Patchin.

MASON, J.   There can be no doubt of the defendant's liability for the repairs upon this vessel, upon the facts appearing in this case.   The master of the ship has an incidental authority to hire seamen for the voyage, and to contract for necessary repairs and equipments for the voyage. (*Story on Agency*, §§ 116, 297 ; *Abbott on Shipping*, 101, 91 to 132 ; 1 *Bell's Com.*, 413 ; 11 *Mass.*, 34 ; 15 *Mass.*, 477 ; 1 *Cow.*, 290 ; 7 *John.*, 311 ; 16 *John.*, 89 ; 1 *Term R.*, 108 ; 2 *Camp.*, 339 ; 4 *B. & Ald.*, 352.)   These sails, rigging and repairs were placed upon this vessel in the port where the defendant resided, by the plaintiff, who was a sailmaker in that port, by the procurement of Mann the master of the vessel, and were used upon the schooner in the sailing and navigating thereof in the ordinary manner.   The defendant received the benefit of these supplies, and must at all events upon these facts be deemed to have ratified the agency of Mann in procuring the repairs, if it should be held that he had not the authority as master for that purpose in the home port.   But as I understand the master's power as agent for the owners in the home port, he may bind them for all reasonable contracts for fitting out, victualing and repairing the ship, unless it be shown that the owners themselves or a ship's husband managed the vessel, and that the party contracting with the master was aware of this. (*Curtis' Rights and Duties of Merchant Seamen*, 172 ; 1 *Bell's Com.*, 413 ; *Abbott on Shipping*, 101 ; *Rich* v. *Coe, Cowp.*, 636 ; *Hussey* v. *Christie*, 9 *East*, 432 ; *Hoskins* v. *Slayton, Cas. Temp. Hardw.*, 360 ; 1 *Bell's Com.*, §§ 434, 435, *pp.* 507, 519, 520, 524 ; 11 *Mass.*, 34 ; 2 *Livermore on Agency*, 267, 269.)   In the case of *Hussey* v. *Christie*, Lord ELLENBOROUGH in delivering the opinion of the court said : " If the repairs be done here the owners are liable, though the master may also become liable on his own contract, if he do not stipulate against his personal liability and confine the credit to the owners.   If the necessary repairs be done abroad, the master may hypothecate the ship for them."   In the case of *Hoskins* v. *Clayton* (*Cas. Temp*

*Hardw.*, 377), which was the case of sails made for a ship at the home port and ordered by the captain, Lord Chief Justice LEE said : " In general if the master orders the goods, both are liable, the master who gives the orders and upon whose credit the work is done, and the owners in respect of the work being done to their property. But yet," he adds, " though both are liable in such a case, if it appears that the master in giving orders acted merely as their servant, he will not be liable." The general doctrine seems to be fully recognized in the books, that where labor by way of repairs is performed upon a ship, or supplies furnished, the presumption is that it was done and furnished for the benefit and at the request of the owners. (*James* v. *Bixby*, 11 *Mass.*, 40 ; *Flanders* v. *Merritt*, 3 *Barb.*, 201.) In the case of *Cary* v. *White* (1 *Bro. Parl. Cas.*, 284), it was decided in the House of Lords that the owners of the ship were liable for money borrowed by the master, where it appeared that the money was wanted for the necessary use of the ship. The cases of *Arthur* v. *Barton* (6 *Mees. & Wels.*, 138), and *Johns* v. *Simons* (2 *Adol. & Ellis, N. S.*, 425), which are relied upon by the counsel for the defendant as authorities against the defendant's liability in this case, are cases involving the master's implied authority to borrow money for the use of the ship in the home port when the owner is present ; and these cases seem to deny the master's authority to charge the owners by borrowing money in such a case. Those cases are clearly distinguishable from the present, for as the money was supplied to the captain he had the opportunity to apply it to any use or purpose which he thought proper, which is very different from necessary repairs done to a ship. So the court held in *Webster* v. *Seekamp* (4 *Barn. & Ald.*, 353, 355, *opin.* BEST, *J.*). There was proof in the case tending to show the repairs necessary. They were of a character generally used about a schooner, and it seems that they were actually used in and about the sailing and navigating the vessel, and the referee has found them necessary. Be this as it may, the defendant having

received the benefit of these repairs, the presumption is that they were made at his request. (*Curtis' Rights and Duties of Merchant Seamen,* 173 ; *Stokes* v. *Carne,* 2 *Camp.,* 339.) Or at least where it is proved that the vessel was in his possession, and that these sails were used in sailing and navigating the vessel by a master employed by him, the law will hold him liable as having ratified the authority of the master to contract for the repairs.

The judgment of the court below should be affirmed.

All the judges concurring,

Judgment affirmed.