## Case No. 9,356.

MAYO et al. v. SNOW et al.

[2 Curt. 102; 1 17 Law Rep. 494.]

Circuit Court, D. Massachusetts. Oct., 1854.

SHIPPING—LIABILITY OF OWNER—SUPPLIES—CONTRACT WITH MASTER—OWNER FOR VOYAGE.

1. Where a master of a fishing vessel agreed with the managing owner to take her for the season and go to the "Banks" codfishing, the owners to have one quarter of the fish and oil, and three eighths of the bounty; the residue to belong to himself and his crew, and to be applied first to pay the bills, and then any balance remaining to be divisible among the master and crew; the master to have the vessel fitted where he pleased, and have the fish cured by whom he should choose; and the master hired the crew and purchased the provisions and supplies for the voyage. It was held, that, on these facts, he was owner pro hac vice, and that he, and not the general owners, was responsible for the "small generals."

[Cited in Flaherty v. Doane, Case No. 4,849; Fox v. Holt, Id. 5,012.]

2. The statute of 1813 (3 Stat. 2, § 1) furnishes no ground for a distinction in this respect between codfishing and other voyages.

3. Although the master is owner for the voyage, the general owners may, nevertheless, be liable for supplies, upon the ground of an agency for the owners to procure them, arising out of the particular terms on which he hires the vessel.

4. And here the owners were liable for certain articles, because, by the contract of letting to the master, they were to procure and pay for such articles before the beginning of the voyage; and they having authorized him to buy them, it was considered that they made him their agent therefor, not because he was master, but by virtue of the particular authority so given.

[Appeal from the district court of the United States for the district of Massachusetts.]

[This was a libel in admiralty by Joshua C. Mayo and others against Jesse Snow and others, owners of the Lydia & Polly, to recover the price of certain supplies. From a decree of the district court in favor of respondents (case unreported), libellants appeal.]

William Brigham, for appellants.

H. A. Scudder, contra.

———

1 [Reported by Hon. William Cranch, Chief Judge.]

1 [Reported by Hon. B. R. Curtis, Circuit Justice.]

CURTIS, Circuit Justice. This is a suit in the admiralty, against the owners of the fishing schooner Lydia & Polly, to recover the price of supplies furnished to that vessel by the libellants. The supplies were of three kinds: first, ship-chandlery; second, that class of articles commonly called in the fishing business, "great generals;" third, what are denominated in that business "small generals." For the amount of the first two, the respondents made a tender before suit, which they pleaded in their answer, and the district court found it to be sufficient. In that respect, with the exception of one item, the decree of that court has not been seriously contested, and I see no reason to disturb it.[2]

Upon the question of the liability of the respondents for the "small generals," it is necessary to ascertain their relation and that of the master to the vessel, when the supplies were procured. The libellants have produced the testimony of the master, and he is the sole witness in the cause. He testifies, that about the last of February, 1853, he agreed with the managing owner of the vessel, to take her for the season and go to the "Banks" codfishing; that the owners were to have one quarter of the fish and oil, and three eighths of the bounty; the residue was to belong to himself and his crew, and to be applied first, to pay the bills, and then any balance remaining would be divisible among himself and the crew: that he was to have this vessel fitted where he pleased, and have the fish cured by whom he should choose; that he hired the crew, and purchased the provisions and supplies for the voyage.

Upon these facts, it is clear the master was the owner pro hac vice, and he, and not the general owners, was responsible for the "small generals." Webb v. Pierce [Case No. 17,320]. The libellants however, insist, that though this may be the law generally, it is not applicable to vessels engaged in the codfishery under the acts of congress, or that if it is, the special facts of this case take it out of that general rule. It is certainly true, that though a master be owner for the voyage, the general owners may nevertheless be liable for supplies, upon the ground of an agency for the owners to procure them, arising out of the particular terms on which he hires the vessel. This case affords an illustration. For what is called the ship-chandlery bill, the owners are liable in this case; because, by the contract of letting to the master, the owners were to procure and pay for

² The liability of the respondents for the "great generals" and the ship-chandlery bill was not contested by them here or in the court below; and they had offered to pay for the same before, and in their answer; and I am informed that in the district court, Sprague, J., on the question of tender, held, that an offer to pay, made in good faith, with undisputed ability and readiness to perform, renewed in the answer in court, was a good and sufficient tender in the admiralty, although originally accompanied with a request for a receipt, and although the money was not subsequently brought into court.

these articles before the beginning of the voyage, and when they authorized the master to buy them, they thereby made him their agent for that purpose; not because he was master, but by force of the particular authority thus given to him. But, aside from such an authority, I do not find any distinction, as to ownership pro hac vice and its consequences, between fishing and other voyages, and none appears to have been made in any case which I have seen. I have been referred to the case of Harding v. Souther [307], decided by the supreme court of Massachusetts in 1853, and not yet reported, in which it was held that the general owners of a vessel engaged in the mackerel fishery, were liable for the wages of the cook. But I understand, that decision rests upon the principle above indicated; that, without regard to who was owner for the voyage, the usages of the business included authority to the master, to hire a cook on account of, and to be paid by, the general owners.

It was suggested that the language of the act of 1813, c. 2, § 1 (3 Stat. 2), implies that the owners have the control of the crew. But the word owner, occurring in connection with the discharge of the crew, may well mean owner pro hac vice. And if it be taken to mean the general owners, it does not prove that congress intended to prohibit such a letting of the vessel to the master, as would make him the temporary owner, as to third persons furnishing supplies. This is a subject which does not seem to have been at all within the view of congress; and I think it would not be safe or warranted to declare it was intended to make a distinction between fishing and other vessels in this particular. In Winsor v. Cutts, 7 Greenl. 261, and Houston v. Darling, 4 Shep. [16 Me.] 413, the supreme court of Maine has applied to the owners of fishing vessels, the same rule of law as is applied to the owners of other vessels; and I consider it correct to do so. Nor do I find any thing in the circumstances of this particular case to take it out of the general rule. There are some loose statements by the master, mostly made in answer to very leading interrogatories, concerning his having received directions from the managing owners as to hiring men and furnishing supplies. But I am satisfied, by a careful consideration of his evidence and of the surrounding circumstances, that what was said was advisory merely, and was not intended, and ought not to be taken, to change the substantial relation of the parties, or to confer on the master an authority to purchase the "small generals" supplies, on the general owners' account. As to the item for money borrowed, the master had no authority to borrow money as the agent of the owners; and if he, in fact, applied some of it to pay for articles which he purchased for the owners, he also had credit for what he thus paid in his account with the owners. He must be taken to have borrowed it on his own account,

and applied a part, as his own money, to the owners' use.

Decree affirmed, with costs for the respondent.