Nathaniel L. McCready et al., Respondents, *v.* Charles E. Thorn et al., Appellants.

A ship's-husband may be appointed by a written instrument or orally, or his appointment may be inferred from his exercising the duties of that office with the knowledge and consent of the owners; his duties are to conduct all the affairs and arrangements for the due employment of the vessel in commerce and navigation, and for these purposes he is the agent and can bind the owners,

One part owner of a ship may bind the others, in the absence of any known limitation upon his authority or expressed dissent upon the part of the other owners, for necessaries and supplies suitable and proper for the ship.

A master of a ship may be appointed by a majority of the owners in interest, notwithstanding the minority dissent, and as such master he becomes entitled to bind all the owners by his acts in the ordinary business of the ship; and this is so, although the master has taken her to navigate upon shares (not chartered her), so long as the person giving credit has no notice of this arrangement.

When the circumstances are such as to justify the master, ship's-husband or part owner to purchase upon the credit of the owners, he will be justified even in a home port in borrowing money to pay for the required articles; to charge the owners in such case, however, the lender must show ordinarily that the money not only was borrowed for a proper purpose, connected with the ship or her navigation, but that it was so applied.

The authorities upon the question of the liability of owners of vessels, for supplies, collated.

(Argued October 1, 1872; decided January term, 1873.)

Appeal from the judgment of the General Term of the Supreme Court in the first judicial district, affirming a judgment in favor of the plaintiffs, entered upon the report of a referee.

The action was brought to recover of the defendants, as owners of the schooner "Susan Orleans," divers sums of money paid out and expended for the use of the said schooner, and for services performed by plaintiffs for the defendants in procuring freight for the said schooner and for other matters.

The principal facts are stated in the opinion. At the time of the transaction mentioned in the complaint, Cathcart, the captain of the vessel, was running the vessel under an arrangement made with defendant Thorn, defendant Lonan assenting thereto. By the agreement, Cathcart was to victual and man her and to divide the profits with the owners, after paying the port charges and port expenses. No notice of such agreement was ever given plaintiffs.

The referee found as a matter of law that the defendants were jointly liable to pay the plaintiffs the amount found due.

*I. T. Williams* for the appellants. Part owners of ships are tenants in common and not joint tenants. There is no such mutual agency among them as exists among partners. (Story Part., §§ 453, 446; 3 Kent, 5th ed., 157; *Brodie* v. *Howard*, 17 C. B., 109; 33 Eng. L. and Eq., 146; Collyer on Part., §§ 1227, 1229; *Dickinson* v. *Valpy*, 10 Barn. & Cress., 135; *Williams* v. *Thomas*, 6 Esp., 18; Abb. on Shipping, m. p., 107; *Turner* v. *Burrows*, 8 Wend., 144; *Campbell* v. *Stein*, 6 Daw., 135; *Holme* v. *Smith*, 7 Bing., 709; *Burns* v. *Topsee*, 6 M. & W., 11; *Wilson* v. *Dickson*, 2 B. & A., 15; 1 Bell Com., 411; *Hewitt* v. *Buck*, 17 Me., 147; *Bell* v. *Humphries*, 2 Starkie, 286.) The question is still open whether one part owner can bind another for necessary repairs and supplies in a home port without specific authority. (1 Pars. on Ship. and Adm., 101, citing *Benson* v. *Thompson*, 27 Me., 470; *Hardy* v. *Sproul*, 31 id., 71; *Schooner W. Thomas* v. *Ellis*, 4 Berney [Del.], 309; *Mitcheson* v. *Oliver*, 5 El. & B., 419; 32 Eng. L. and Eq., 219, 236; *Brodie* v. *Howard*, 17 B. C., 109; 33 Eng. L. and Eq., 146; *Revens* v. *Lewis*, 2 Paine C. C., 202.) The law throws upon the person seeking

to recover for money advanced or supplies furnished, the burden of showing they were necessary for the ship at the time. (Maclachlan on Mer. and Shipping, 132, 133; *Carey* v. *White*, 1 Bro. P. C., 384; *Macintosh* v. *Mitcheson*, 4 Exch., 175; *Alexander Larees*, 1 W. Rob. Ad., 228, 346; *Sophie Gustavus*, id., 369; *Webster* v. *Seekamp*, 4 B. & A., 352; *Edwards* v. *Havill*, 14 C. B., 107; *Mitcherson* v. *Oliver*, 5 E. & B., 419; *Rocher* v. *Rushee*, 1 Stark., 27; *Palmer* v. *Gooch*, 2 id., 428; *Belden* v. *Campbell*, 6 Exch.; *Thacker* v. *Moates*, 1 M. & Rob., 97; *Arthur* v. *Barton*, 6 M. & W., 138; *John* v. *Simon*, 2 A. & E. [N. S.], 425.) It was error to admit the bill of items in evidence. (*Vosburgh* v. *Thayer*, 12 J. R., 461; *Foster* v. *Coleman*, 1 E. D. Smith, 85; 11 Wend., 568; 4 id., 483; *Reddington* v. *Gilmore*, 1 B., 235; 4 E. D. Smith, 239; 2 Hilt., 422.) Neither the master, ship's-husband nor a part owner can pledge the credit of another part owner for the premium upon insurance. (Abb. on Shipping, m. p., 108; *Turner* v. *Burrows*, 8 Wend., 144.)

*Amasa J. Parker* for the respondents. The captain of a vessel, in the absence of a notice of the agreement under which he is sailing her, is authorized to charge the owners for the payment of a loan of money for necessary disbursements, even in a home port, when the resident owner concurs. (Addison on Cont., 403, 404.) It made no difference as to the liability of the defendants that the captain had taken the vessel on shares. (*Kohler* v. *Wright*, 7 Bosw., 318, 328; *Kenzel* v. *Kish*, 37 Barb., 119; *Bassett* v. *Crowell*, 28 How. Pr. R., 241; *Saxton* v. *Read*, Lalor's Supp., 523.) Unless notice of the agreement under which the vessel was sailed had been given to the creditor, it was no defence. (*Provost* v. *Patchin*, 5 Seld., 535, 539, and cases cited; approved, *Stedman* v. *Fieldler*, 20 N. Y., 441; *Ford* v. *Crocker*, 48 Barb., 142; *Skolefield* v. *Potter*, Davies' R., 392; *Schooner Cassius*, 2 Story C. C. R., 92, 94.) Without the express dissent of the other owners, Thorn had the right to act for them. (*Gould* v. *Stanton*, 16 Conn., 12.)

Earl, C. At the request of defendant Thorn, who was one of the owners, and of Cathcart, the master of the schooner Susan Orleans, the plaintiffs, who were ship brokers in New York, advanced to the master several small sums of money to pay the port charges of the vessel, and also paid for wood placed upon the vessel, for labor done upon the vessel, and for shipping crew, and repairing chronometer, which advances and payments, together with plaintiffs' commission upon them and commission for procuring freight for the schooner, amounted to about the sum of $248. This sum the referee allowed the plaintiffs, after deducting an item of credit.

There are three grounds, upon either of which I think the plaintiffs' recovery can be sustained:

1. The defendant Thorn was the ship's-husband. The referee, however, did not find that he was. He simply found that the advances and payments were made, and the service rendered upon the request of Thorn, one of the owners. But there was evidence tending to show, and from which the referee could properly have found, that he was the ship's-husband; and upon appeal, a party seeking to uphold the report of a referee is entitled to the benefit not only of the facts actually found by the referee, but, if necessary to sustain the conclusions of law found by him, also of all such facts as the evidence tended to prove, and as the referee might properly have found in his favor.

A ship's-husband may be appointed by a written instrument or orally, or his appointment may be inferred from his exercising the duties of his office with the knowledge and consent of the owners. His duties are determined by usage, and are, in general, to provide for the complete sea-worthiness of the ship; to see that she has on board all necessary and proper papers; to make contracts for freight and to collect the freight, and to enter into proper charter-parties; to direct the repairs, appoint the officers and mariners; to see that the vessel is furnished with provisions and stores, and generally to conduct all the affairs and arrangements for the due employment of the ship in commerce and navigation, and for all these pur-

poses he is the agent of the owners, and can bind them by his contracts. (Story on Part., § 418; Coll. on Part., § 1213; 1 Parsons on Maritime Law, 98.) There are limitations upon his authority which it is not necessary to mention here.

Now, what are the facts of this case tending to show that the defendant Thorn was the ship's-husband? He was the only owner residing in New York, where the vessel was. So far as the evidence discloses, he was the only owner having any active management or control of the vessel. Just before the contract was made with Cathcart, by which he became master, he overhauled the vessel and paid her bills, and during that time, as he himself testified, he was ship's-husband. He made the contract with Cathcart, and went with him to the plaintiffs, informed them that he was ship's-husband, and requested them to give the credits to the master upon which this action is based. Cathcart testified that Thorn was, at the time, the managing owner. All these facts show, beyond controversy, that Thorn was the ship's-husband. The only evidence, in any way in conflict with this, is that portion of the testimony of Thorn in which he testified that he had nothing more to do with the vessel after she was placed in charge of Cathcart; and also the testimony of defendant Pharo, in which he testified that the schooner had no ship's-husband and that he never authorized Thorn to act for him. As to Thorn's evidence, it appears that he did continue to act for the vessel after the contract with Cathcart, and that he requested of the plaintiffs the very credits in question, representing himself to be ship's-husband. If, as he confesses, he was ship's-husband until the vessel was placed in charge of Cathcart, how and by whom and by what act was his relation to the vessel in that capacity terminated? The other owners, living in New Jersey, not far from New York, did not interfere, and did not terminate his authority.

It cannot be presumed that Thorn overhauled the vessel, paid her bills and employed the master under the special contract made with him, the vessel remaining in port several weeks and perhaps months, without the knowledge or consent

of the other owners, who lived near. In the absence of any denial by them, it must be presumed that all this was done with their knowledge and consent. The defendant, Lonan, was not called as a witness; and the defendant, Pharo, who was called as a witness for the defendants, while in general terms he testified that the schooner had no ship's-husband and that Thorn was never authorized to act for him, did not deny knowledge of all the acts done by Thorn, or that he assented to them, and did not claim that he made any objection to anything which Thorn had done. Hence, I cannot doubt that there was ample evidence from which the referee could properly have found, and from which we may hold he did find, that Thorn was the ship's-husband, and hence authorized to bind the owners for the payments and advances made and the services rendered by the plaintiff.

(2.) Thorn was part owner of the vessel, and as such had authority to bind all the owners *in solido* for the credits given upon his request to the master. It must be borne in mind that he was the only owner residing at the port where the vessel was, and that there is no proof whatever that the other owners had ever limited his authority or objected in any way to his right to act for them. Under such circumstances Thorn, as part owner, had authority to bind all the owners for the credits in question. In Collyer on Part., sec. 1225, it is said: "In all that concerns the repairs and necessaries of the ship, one part owner is agent for the other part owners." In Story on Part., sec. 446, the learned author says: "One part owner may bind the others by his contract for repairs and materials and expenses of outfits by implication, where there is no known disagreement among them, and there is an acquiescence in what is done or is doing." In 3 Kent's Com., 155, it is said that, "as the law presumes that the common possessors of a valuable chattel will desire whatever is necessary to the preservation and proper employment of the common property, part owners on the spot have an implied authority from the absent part owners to order for the common concern whatever is necessary for

the preservation and proper employment of the ship. They are analogous to partners, and liable under that implied authority for necessary repairs and stores ordered by one of themselves." In *Story on Agency*, sec. 40, it is said that "part owners of ships are tenants in common, holding distinct but undivided interests, and each is deemed the agent of the others as to the ordinary repairs, employment and business of the ship, in the absence of any known dissent." In *Stedman* v. *Feidler* (20 N. Y., 437), Judge ALLEN says : "There is no doubt that, as a general rule, in case of ships or boats, one part owner may bind the other for necessary supplies furnished on credit, and so also the master may bind the owners."

Without citing other authorities, or commenting upon those, both in England and this country, which are in conflict with the rule as above laid down, although I have carefully examined and considered them, I am satisfied that the just and proper rule is that a part owner of a ship may bind his co-owner for necessaries and supplies suitable and proper for the ship, upon the presumption of law, in the absence of any limitation upon his authority or any expressed dissent, that each has authority to bind the other as his agent.

(3.) These advances and payments were made and services rendered upon the request also of Cathcart, the master, and hence the owners were bound. (*Saxton* v. *Read*, Lalor's Supp., 323 ; *Butler* v. *Murry*, 30 N. Y., 88 ; *Provost* v. *Patchin*, 9 N. Y., 235.) He was properly placed in charge of the vessel as master by Thorn as ship's-husband. Thorn also, as part owner, had authority to appoint the master. There was no dissent on the part of the other owners, and their assent under the circumstances of this case must be presumed. Besides, he appointed the master upon consulting, as I understand the evidence, with Joseph Pharo, who represented one of the owners. Hence the master was really appointed by a majority of the owners ; and it is said in Story on Agency (§ 40) that "a majority of the owners in interest have a right to employ the ship, and they

may appoint a master, notwithstanding a dissent from the minority, and the master so appointed will, *virtute officii*, become entitled to bind all the owners by his acts in the ordinary business of the ship." And it matters not that the master has taken the vessel to navigate upon shares so long as the persons giving credit to him have no notice of his arrangement with the owners, and that arrangement is not such as to make him, *pro hac vice*, the owner of the vessel. (*Saxton v. Read*, Lalor's Supp., 323; *Basset v. Crowell*, 28 How. Pr. R., 241; *Kenzel v. Kirk*, 37 Barb., 119; *Vose v. Cockroft*, 44 N. Y., 415, 429.)

I have, so far, not noticed the claim made by the appellant, that there was no proof that the credits in question were for necessaries furnished to the vessel. It is true that a claimant must in all such cases show that the articles furnished were necessary. But it is held that supplies are necessary when they are reasonably fit and proper for the ship or the service in which she is engaged, and such as a prudent owner would order. (*The Medora*, 1 Sprague, 138; *Webster v. Seekamp*, 4 Barn. & Ald., 352; *Fort v. Crocker*, 48 Barb., 142; Maclachlan on Mer. and Shipping, 132, 133.) Within the rule laid down by these authorities it cannot well be doubted that all the items claimed by the plaintiffs, aside from the money advanced to the master, were clearly chargeable to the owners. It is claimed, however, that the plaintiffs ought not to have recovered for the money. This money was advanced in small sums to the master to pay port charges, and was actually used for that purpose. It is true that it is said in general language, in some of the elementary treatises and in reported cases, that neither the ship's-husband nor a part owner has power to borrow money on account of the owners (3 Kent's Com., 157; Story on Part., 446), and that the master has such power only in case of necessity when the owner cannot be communicated with. In *Rocher v. Busher* (1 Starkie, 23), the plaintiff supplied money to the master of a vessel at Oporto, and Lord Ellenborough said: "In strictness, a claim of this kind is limited to articles supplied

through necessity. But when the necessity exists, money may be supplied as well as goods and the amount recovered; this, however, must not be understood of an indefinite supply of cash, which the master may dissipate, but only such as is warranted by the exigency of the case, or for the payment of duties or other necessary purposes." And in his opinion he stated that he once held that proof of the strict application of the money to the purposes of the ship was necessary. In *Palmer* v. *Gooch* (2 Starkie, 386, 548), a case where money was advanced to a master in a foreign port, it was held that it was essential to prove the advance of a specific sum, that it was necessary for the use of the ship and that it was so applied in fact. In *John* v. *Simms* (42 Eng. C. L., 743), it was held that, in a home port as well as a foreign one, the master has implied authority to borrow money for the necessary use of the ship, if the owner is absent, and no communication with him can be had without great prejudice and delay. In *Edwards* v. *Hovill* (78 Eng. Com. L., 106), a vessel having been a fortnight windbound at Newport, her owner residing at Exeter, one day's post from Newport, the master borrowed five pounds from a broker to enable him to purchase provisions necessary for the use of the ship, and it was held that the jury were justified in inferring that there was such a reasonable necessity for borrowing the money as to render the owner liable for it, though there was no proof that the goods might not have been obtained by the master on credit. In *Stearns* v. *Doe* (12 Gray, 482), it was held that a person who lends money in Boston, on the credit of the owner, to the master of a vessel owned in New York for the payment of officers and crew, in the absence of any consignee or other means, may recover the amount of the owner, if the money is necessary for the purpose and lent in good faith, and after due diligence to ascertain the necessity; and that the question of the necessity, good faith and diligence are for the jury. Maclachlan on Mer. Ship. (132) lays down the rule that the master's authority to borrow "is not to be understood of an indefinite supply of cash for the master to dissipate; or an

advance of money upon a general account between the master and the creditors, part of which the master, as it happens, applies to the ship's use, but of a specific sum to be specifically applied to the purposes of the ship under the same reasonable necessity and restriction as governs in other cases."

It will thus be seen how carefully, by these authorities, the master's authority to borrow money on the credit of the owners is hedged in. He can borrow money in a foreign port in a case of necessity, but it must be a specific sum for a specific purpose. He can also borrow money in the home port in a case of necessity, but not if the owner be at such port, so that he can be communicated with. Why should there be any difference in the authority of the master, part owner or ship's-husband, as to obtaining money for the use of the ship or obtaining any other necessary and proper article? Either of them may, since the decision of the case of *Provost* v. *Patchin* (*supra*), even in a home port in which the owners are present, and without consulting or communicating with them, purchase necessary and proper supplies for the vessel upon the credit of the owners. This they can do by virtue of their implied authority as agents of the owners. If they can do this, why may they not, when there is the same necessity and propriety, obtain money for the use of the vessel? If they may purchase upon the credit of the owners $100 worth of goods and provisions, why may they not borrow $100 upon the credit of the owners and pay cash for the same articles? And upon principle, why is the one credit within and the other without the implied authority which they as agents possess? The only reason suggested for the difference in the authorities above cited, and also in *Carey* v. *White* (1 Bro. Parl. Cases, 284), *Arthens* v. *Barton* (6 Mees. & Wels., 138) and *Webster* v. *Seekamp* (*supra*), is that the agent may dissipate and misappropriate the money. But so he could purchase supplies and divert them (but with less facility) from the use of the vessel.

I think the true rule, founded upon principle, sustained by analogies and in conflict with no authority in this State is, that when the circumstances are such as will justify the master,

ship's-husband or part owner to purchase upon the credit of the owners an anchor, a sail or other necessary supplies, the same circumstances will justify them to borrow the money, even in a home port, upon the credit of the owners to pay cash for the same articles. But the rule should have this qualification, that where money is borrowed, the lender, to entitle him to recover of the owners, should show not only that the money was borrowed for a proper purpose connected with the ship or her navigation, but that it was actually applied to such purpose. There may be cases where this qualification should not be applied. But the rule as thus qualified can work no mischief, and is safe, simple, practicable and just.

In this case, while the master could not, after the lapse of nine years when he testified, tell precisely the particular purposes for which he applied the money, he remembered and was able to testify that he used it all for port charges, and this was sufficient. If the master had procured the plaintiffs to purchase the supplies and deliver them on the vessel, it would be unquestioned that the owners would have been liable for them. And so they must be equally liable if plaintiffs delivered the money to the master, and he used it to purchase the same supplies for the vessel.

These views lead to an affirmance of the judgment, with costs.

All concur.

Judgment affirmed.