DURANDO *v.* NEW YORK & NORWALK STEAM-BOAT CO.

(*City Court of New York, General Term.* March 27, 1889.)

PRINCIPAL AND AGENT—PROOF OF AGENCY.

The defendant steam-boat company made an arrangement with A. as steward, by which the latter was to feed the crew of its boat at a specified rate, and by which he was to pay for the privilege of keeping a restaurant for passengers on board the boat, he to furnish the meat and other articles required at his own expense. *Held,* in an action to charge the defendant as owner of the boat for meat sold to the steward by the plaintiff, who had no notice of such arrangement, that the defendant never having held A. out as its agent, nor paid any bills contracted by him, and there being no general custom by which stewards were authorized to contract for meat and the like, the defendant was not liable.

Appeal from trial term.

Action by William P. Durando against the New York & Norwalk Steamboat Company to recover for meat furnished by him and delivered on board of the steam-boats, City of Albany and City of Norwalk, belonging to the defendant, (a corporation,) and plying between the city of New York and Norwalk, Conn. The former was a passenger and the latter a freight boat. The meat furnished was not ordered by the defendant or by the master of either boat, but by one Louis J. Adams, a colored man, who acted as steward or cook of the boats. The arrangement between Adams and the defendant was that he was to feed the crew of both boats at the rate of $4 per head each week, and that he should pay to the defendant for the use of the restaurant for passengers on the City of Albany, $80 per month, Adams to furnish all the meat and other articles required at his own expense, the profits, whatever they might aggregate, to be his. There was no evidence that the defendant or any officer of it or of the boats, ever ordered any goods from the plaintiff, or ever paid him any money, nor was there any proof that Adams had any

authority to charge the defendant for the meat furnished by the plaintiff. The apparent ground upon which the plaintiff proceeded was that as Adams was steward of the boats on which the goods were delivered, and as the plaintiff had no knowledge of Adams' contract with the defendant, the latter became liable to him because it owned the boats. Upon the trial this theory prevailed, because the plaintiff recovered a verdict by direction of the court, for $1,101.20, and from the judgment entered thereon, the defendant appeals.

Argued before McADAM, C. J., and NEHRBAS and EHRLICH, JJ.

*Owen, Gray & Sturges,* for appellant.  *E. P. Wilder,* for respondent.

McADAM, C. J.  For the purpose of maritime liens and the like, a vessel is treated as a legal entity, and demands are at times enforced against it for which the owner could not be charged *in personam.*  The present action is in the latter form against the defendant as owner, and as it neither ordered the supplies, nor appropriated them to its own use after they were ordered, it cannot be held liable to the plaintiff, except upon the familiar principles of the law of agency.  The plaintiff proved that Adams, who ordered the beef from the plaintiff, was steward or cook of the two steamers, and that the goods were delivered on board of those vessels.  This may have made out a *prima facie* cause of action against the defendant as owner.  *Flanders* v. *Merritt,* 3 Barb. 201.  But when it was proved that Adams was not the defendant's agent or employe, but an independent contractor, in a dual capacity, to-wit, to feed the crew of both vessels at an agreed weekly rate, and as lessee of the restaurant of the steam-boat City of Albany, under a contract to pay the defendant, as owner, $80 per month for its use, and that the beef was supplied to fulfill that contract, and was so used by Adams, whatever presumption previously existed against the defendant was destroyed, and the plaintiff's case left unproved.  By the demise of the restaurant to Adams, he became *pro hac vice* the owner thereof, and alone liable for debts contracted for the purpose of running it.  *Webb* v. *Peirce,* 1 Curt. 105; *Mayo* v. *Snow,* 2 Curt. 102; *Fox* v. *Holt,* 4 Ben. 290; *The Metropolis,* 8 Ben. 19; *The Norman,* 6 Fed. Rep. 406; *Thomas* v. *Osborn,* 19 How. 30; *Hallet* v. *Insurance Co.,* 8 Johns. 212; *Kenzel* v. *Kirk,* 37 Barb. 120; *Macy* v. *Wheeler,* 30 N. Y. 239, 240.  He was neither an agent nor servant of the defendant, but acted on his own behalf as principal.  There is no evidence that by general custom or usage stewards are authorized to contract for beef or the like, and charge their boats therefor, so as to bind the defendant, even to a creditor having no notice of the agreement made under which the steward was acting; nor is there anything in the case from which an authority to charge it can be implied.  The defendant never paid bills contracted by Adams, never held him out as agent, and did nothing from which it could be inferred that he had any authority to bind it.

The proceeding not being *in rem,* it is useless to examine the decisions bearing on maritime or state liens where the credit is given exclusively to the vessel, and where the authority of the master of a vessel to charge the owner is sometimes implied, although the vessel has been chartered and is under the control of others, (*Vose* v. *Cockroft,* 45 Barb. 58; *Pendleton* v. *Franklin,* 7 N. Y. 508;) for the master, as a rule, is the accredited agent of the owners as to all who know nothing to the contrary, (*Provost* v. *Patchin,* 9 N. Y. 235.) A steward, on the other hand, is generally regarded as one of the crew, and may be merely a waiter on board the vessel, (Webst. Dict.,) and there is nothing in his title which *ex vi termini* gives him more implied authority to bind the vessel or its owners for supplies than any other member of the crew, and they have none.  The power did not vest in the steward *ex necessitate rei,* for the owner was represented by its chosen agent, the master, who (apart from the owner) has sole power to determine what supplies should be procured for

the vessel, from whom, and the price to be paid for them.    *Ford* v. *Crocker*, 48 Barb. 142.    When it gets below the master, there is no implication of power to contract for the owner, and where debts are contracted by subordinates, the *onus* is cast on the creditor who seeks to enforce such claims against the vessel or its owner to prove, as in other cases of servants or agents, that the subordinate had authority from the master or owner to perform the act, before either the vessel or owner can be held for the demand made.    This authority must be established either by direct proof, by recognition of previous acts of a like character, or by the general custom or usage of the port authorizing the steward to exercise the power assumed.    *Ernst* v. *The Brooklyn*, 22 Wis. 649.    There is nothing in the case showing that the steward had any power whatever to bind the defendant on the contract made by him.    On the contrary, it clearly appears that he had not.    For these reasons, the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

On the new trial, the question when Adams died, whether any and what meat was furnished to the boats after his death, and on whose credit the value of such meat and the liability of the defendant therefor may be intelligently determined.