JAMES W. CHASE, Respondent, *v.* SARAH C. McLEAN et al., Appellants.

The power of a ship's husband, as such, and in the absence of any special authority, to bind the owners of the ship by his contracts, relates only to the present or future use of the ship; it is based on present and pressing necessity.

Where, therefore, in an action against the owners of a vessel to recover an alleged loan to the ship's husband for the use of the vessel, it appeared that the loan was made when the vessel was out of commission, and that the money was borrowed and used in paying a debt contracted three years before for supplies furnished the vessel, *held,* defendants were not liable.

Also *held,* that a ship's master has no authority to borrow money at the charge of the owners to pay such an indebtedness.

*McCready* v. *Thorn* (51 N. Y. 454), distinguished.

(Argued December 11, 1891; decided January 26, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 10, 1890, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

This action was brought by plaintiff, the former master of the bark " Commerce," to recover $449.

The complaint alleged that both defendants, Sarah C. and David W. McLean, owned the ship, the defendant David being also ship's husband; that in such capacity David, with the knowledge and consent and by the authority of the defendant Sarah, contracted bills for and on account of said bark; borrowed moneys for the payment of bills, and disbursed moneys in satisfaction thereof; that on the 24th day of December, 1887, the plaintiff lent to the defendants, at their request, through said David W. McLean as agent, and ship's husband aforesaid, the sum of $449.95, to be used and applied in paying bills and expenses of the said bark " Commerce," on condition that it should be paid in two installments, at dates specified.   The answer of the defendant Sarah was a general denial.   The answer of the defendant David alleged that he was both owner and ship's husband and denied that the defendant Sarah was an owner of the vessel, or of any interest therein; he admitted the receipt from the plaintiff of the sum of money alleged in the complaint, but denied that it was conditioned that it should be repaid as stated in the complaint, and alleged that it was only to be repaid in the event that there should be found such a sum due to the plaintiff after the examination of his accounts.

It appeared on the trial that the plaintiff had been the master of the bark "Commerce" from August, 1883, until December, 1887.   In the latter month he collected the sum of $800 belonging to the vessel, and exercising a captain's prerogative applied it in payment of wages then due.   The defendant David, whom the evidence tended to show was the ship's husband, stated to plaintiff that he wanted some of the money to pay the ship's disbursements.   The plaintiff let him have $449,

with the understanding that his wife, the defendant Sarah, or her father, Peter S. Parker, was to sign two notes, which he took for the loan.

The defendant David brought to plaintiff the notes bearing the indorsement " J. S. Parker," and declared that it was the signature of Peter S. Parker. The plaintiff accepted it as such. It turned out that J. S. Parker was a man without means.

This action was not brought on the notes, but against the defendants as alleged owners of the bark " Commerce," on the ground that the moneys were loaned for the use of the bark, and the notes were produced on the trial and an offer of their surrender for cancellation made. There was some controversy as to whether the loan was made as claimed by the plaintiff. The defendant, Sarah C. McLean, also denied being a part owner of the bark. These two questions of fact were submitted to the jury, the court having denied the motion to dismiss the complaint " on the stipulation that in case the jury find a verdict for the plaintiff I may reserve the case for further consideration of the law ; and in case I come to the conclusion that defendant is right and plaintiff wrong upon it, then I may render judgment for the defendant, notwithstanding a verdict."

In his instruction to the jury the court directed that if they found the loan was made, and that Sarah McLean was the owner of 127-128ths of the vessel, then to render a general verdict against both defendants.

The jury having rendered a verdict in favor of the plaintiff and against both defendants, their counsel moved for judgment, notwithstanding a verdict under the stipulation.

The court in denying the motion said: " The question of law in this case is on the border line. But inasmuch as the jury has found for the plaintiff the defendant ought to bear the onus of appeal."

Other facts appear in the opinion.

*Wm. H. Arnoux* for appellants. Sarah McLean cannot be held liable. Even if she were the sole or part owner of the

vessel she would not be liable. (*McCready* v. *Thorn*, 51 N. Y. 457; Story on Part. § 418; *Turner* v. *Burrows*, 8 Wend. 144; *Martin* v. *Farnsworth*, 49 N. Y. 555; *Rossiter* v. *Rossiter*, 8 Wend. 494; *Rocher* v. *Busher*, 1 Stark. 23; *Palmer* v. *Gooch*, 2 id. 386, 548.; *John* v. *Simons*, 42 Eng. C. L. 743; *Edwards* v. *Hovill*, 78 id. 106; *Stearns* v. *Doe*, 12 Gray, 482; *Beldon* v. *Campbell*, 6 Exch. 886.) The judgment must be reversed for the error of law in the charge of the judge that what was done with the money was immaterial. (*Rocher* v. *Busher*, 1 Stark. 23; *Palmer* v. *Gooch*, 2 id. 386; *Stonehouse* v. *Gent*, L. R. [2 Q. B.] 431; *Stearn* v. *Doe*, 12 Gray, 482; *Webster* v. *Seekamp*, 4 B. & Ald. 354; *The Alexander*, 1 W. Robb. 361; *MacIntosh* v. *Mitcheson*, 4 Exch. 175; *Cary* v. *White*, 1 Bro. Par. Cas. 284; *The Sophie*, 1 W. Robb. 369; *The Ocean*, 2 id. 368; *The Helena Sophie*, 3 id. 270; *The Lula*, 10 Wall. 201; *The Grapeshot*, 9 id. 129; *The Kalorama*, 10 id. 204.) There was no evidence whatever that Sarah owned any share in the boat; so that even if David had by law the right to charge the owners, Sarah would not be liable. And it was error to submit the question of ownership to the jury, there being no conflict of evidence. (*Ward* v. *Bodeman*, 1 Mo. App. 272; *Macy* v. *Wheeler*, 30 N. Y. 231.) Admitting, for the sake of the argument, that Sarah was the owner, and that there was power in the ship's husband to borrow upon her credit for past due debts for a ship out of commission, even then plaintiff cannot recover, for there was no proof that David was ship's husband. (*Stringham* v. *S. N. Ins. Co.*, 4 Abb. Ct. App. Dec. 315; *McCready* v. *Thorn*, 51 N. Y. 454.) Defendant Sarah cannot be held as part owner, and she cannot be held under the ordinary law of agency. (*Ward* v. *Bodeman*, 1 Mo. App. 272; *Stedman* v. *Feidler*, 25 Barb. 608.) The judgment as to Sarah McLean should be reversed and the complaint dismissed as to her, with costs. All the possible evidence was given as to her liability, and it was shown that in no event can she be held liable. (*Goodale* v. *Lawrence*, 88 N. Y. 513.)

*Thomas J. Ritch Jr.*, for respondent. Fraud vitiates every contract. If, therefore, plaintiff loaned this money to and for the use of the bark's owners and on the representations of David W. McLean, and he was their agent, he has the legal right, on surrendering said obligations of indebtedness, to maintain his action directly against the principals, said owners. (3 Pet. 1, 7; 1 Phil. on Ev. 485.) This was an account stated. In proving such an account, it is not necessary to show an express examination of the respective demands or claims of the parties, or an express agreement to the final adjustment; all this may be implied from circumstances. (*Lockwood* v. *Thorne*, 15 N. Y. 288; 6 id. 461.) This money was obtained by one part owner of a vessel to pay for the proper expenses of said vessel and for the benefit of all the owners. One part owner of a vessel has the authority, in the absence of any known limitation to bind his co-owners for such supplies and chandlery bills as are reasonable and proper. (*McCready* v. *Thorne*, 51 N. Y. 451; *Provost* v. *Patchin*, 9 id. 240.) David W. McLean was the general agent of his co-owner, Sarah C. McLean, and had the authority to bind her in all things as he saw fit. (*McCready* v. *Thorne*, 51 N. Y. 451; *E. N. Y. & J. R. R. Co.* v. *Lightall*, 6 Robt. 407; 36 Hun, 481; 5 Abb. [N. S.] 458; *Davis* v. *Bemis*, 40 N. Y. 453; *Adams* v. *Cole*, 1 Daly, 147.) The defendant's objection to plaintiffs showing that his witness, David W. McLean, was mistaken and had made different statements on another occasion was untenable. (*Bullard* v. *Pearsall*, 53 N. Y. 231.) An exception to detached portions of a charge are unavailing, a charge must be considered as to its purpose and effect, and not piecemeal, but as a whole; if it conveys to the jury the correct rule of law, the judgment will not be reversed, although detached sentences may be erroneous. (*Crist* v. *E. R. Co.*, 58 N. Y. 638; *Caldwell* v. *N. J. S. Co.*, 47 id. 286; *Goll* v. *M. R. Co.*, 5 N. Y. Supp. 185; *Monroe* v. *Potter*, 22 How. Pr. 57; *Grosser* v. *Stellwagen*, 25 N. Y. 315; *Weil* v. *Reynolds*, 42 Hun, 647; *Ayrault* v. *P. Bank*, 47 N. Y. 570.)

PARKER, J.   The money was not borrowed for the purpose of providing a proper outfit for the vessel; to make repairs; nor to do other necessary things for an immediate voyage. She was out of commission and the plaintiff, who had been her captain for three years, had terminated that relation.   It was used in paying a debt contracted about three years prior with David W. McLean's sons, for chandlery goods and ship supplies furnished to the bark "Commerce."

The question presented is whether a part owner of a vessel is legally responsible for the payment of money borrowed by a ship's husband to pay a prior indebtedness, although contracted for the benefit of the vessel?   It is raised by exceptions taken to the refusal to dismiss the complaint, and to the direction of the judge to the jury, that Mrs. McLean was liable, if a part owner.

The powers of a ship's husband are determined mainly by usage and are defined in *McCready* v. *Thorn* (51 N. Y. 457, 458), as follows: "To provide for the complete seaworthiness of the ship; to see that she had on board all necessary and proper papers; to make contracts for freight, to collect the freight and to enter into proper charter parties; to direct the repairs, appoint the officers and mariners; to see that the vessel is furnished with provisions and stores, and generally to conduct all the affairs and arrangements for the due employment of the ship in commerce and navigation, and for all such purposes he is the agent of the owners and can bind them by his contracts."   (See also 1 Bell's Comm. [5th ed.] 504; 1 Parsons on Shipping & Adm. 109: Story on Part. § 418; 1 Parsons Mar. Law, 98.)

It will be observed that these duties have reference to the future employment of the ship, and her preparation for it.

Mr. Bell, in treating of the limitations of the power of a ship's husband, says:

"(1) That, without *special powers, he cannot borrow money generally for the use of the ship;* though he may settle the accounts of the creditors for furnishings, or grant bills for them, which will form debts against the concern, whether he

has funds in his hands or not, with which he might have paid them.

" (2) That, although he may, in the general case, levy the freight, which is by the bill of lading, payable on the delivery of the goods, it would seem that he will not have power to take bills for the freight and give up the possession and lien over the cargo, unless it has been so settled by charter party, or unless he has special authority to give such indulgence.

" (3) That, under general authority as ship's husband, he has no power to insure, or to bind the owners for premiums; this requiring a special authority.

(4) That, as the power of the master to enter into contracts of affreightment is superseded in the port of the owners, so it is by the presence of the ship's husband, to the knowledge of the contracting parties, that the ship's husband has been appointed." (1 Bell's Comm. [5th ed.] 504, 505.)

The courts have modified in some respects the limitations formerly existing and necessarily correspondingly enlarged the powers of the ship's husband.

In this state it has been held that a master has power to contract for repairs, even in a home port, if they were absolutely necessary. (*Provost* v. *Patchin,* 9 N. Y. 235.)

While formerly he was not permitted to borrow money, the rule was first so modified as to authorize the borrowing of money in foreign ports in case of necessity, and afterwards so as to include home ports, if the owner could not be communicated with, and the money was required immediately and for a specific purpose. (*Rocher* v. *Busher,* 1 Starkie, 23; *Palmer* v. *Gooch,* 2 id. 377–548; *Johns* v. *Simons,* 42 Eng. C. L. 743; *Edwards* v. *Havill,* 78 id. 106; *Stearns* v. *Doe,* 12 Gray, 482.)

And in *McCready's* case (*supra*), relied on by the court below in affirming the judgment, the rule was further extended, so as to permit the borrowing of money to pay for such supplies as the ship's husband would have authority to purchase on credit. In that case the ship's husband as such, had authority to purchase the articles, to pay for which he borrowed the necessary amount of money.

And to the inquiry upon what principle is the one credit within, and the other without the implied authority of the agent, the learned judge responds none, except that suggested by the authorities, that the agent may dissipate and misappropriate the money. And this objection he guards against, by so qualifying the rule, laid down by the court permitting the ship's husband to borrow money, to pay for articles whenever the circumstances would permit him to purchase such articles on the credit of the owners, as to burden the lender with proving as a condition of recovery, that the money was not only borrowed for a proper purpose connected with the ship, or her navigation, but that it was actually applied to such purpose.

Our attention has not been called to any other case, which goes quite so far in support of the authority of a ship's husband to borrow money, and while we fully approve of the decision made, we do not regard it as applicable here.

The implied agency of the ship's husband, has only to do with the present, or future use of the ship. It is based on present and pressing necessity, occasioned by the dangers of navigation with a vessel out of repair, improperly rigged and inadequately provisioned.

Now this transaction, assuming as we must in view of the finding of the jury, the plaintiff's version of it, had not to do with the then necessities of the vessel, or its preparation for a voyage, for it was out of commission. If the ship's master had asserted otherwise, within the rule laid down in *McCready's* case the plaintiff would have been obliged to prove its application to such purpose. But he did not claim that it was to be so applied and in fact it was used to pay an old debt, of several years standing. For such a purpose a ship's master has no authority to borrow money at the charge of the owners.

On this appeal the respondent calls our attention to the evidence of Sarah C. McLean, which he claims conferred on David W. McLean special powers in addition to the implied authority belonging to him as ship's master.

Had the pleadings presented such an issue, the testimony to

which he refers, considered in connection with the other evidence in the case, might have presented a question in that regard for the jury. But no such claim was made in the complaint; the cause was not tried on that theory; nor was any such question presented to the jury, or a request to that effect made.

It cannot, therefore, be made available to the plaintiff here.

The judgment should be reversed.

All concur.

Judgment reversed.