made secretly, so that knowledge thereof was withheld from them, and they dealt with grantor upon the faith of his owning the property transferred."

The deeds by Charles S. Lowther to William H. Rader, and from him to Amelia R. Lowther, were deeds confirmatory of the assignments made in 1896 and 1897.

Plaintiff's counsel lays great stress upon the character of the bills of sale from Clarence L. Lowther to Charles S. Lowther. In the partnership action between the parties this court, at Special Term, decreed that the accounting between the parties should be as of June 13, 1903, decreeing that the bills of sale above referred to were fraudulent. Upon an appeal to the Appellate Division of this department it was held that the plaintiff, Clarence L. Lowther, had nothing to do with the firm after January 24, 1903, and modifying the judgment in that respect, thus, in effect, sustaining the validity of the bills of sale. See Lowther v. Lowther, 105 App. Div. 638, 94 N. Y. Supp. 159. This also applies to the dispossess proceedings whereby Lowther Bros. were dispossessed from the coal yard on Thirty-Second street.

The question left to be determined is whether or not the assignments by Christopher M. Lowther and from Charles S. Lowther to Amelia R. Lowther of the assignment of the one-half interest in certain rents accruing on the lease to Burns of the Thirty-First Street and East River property is fraudulent. A careful consideration of the testimony confirms the view expressed by me during the trial that, while such assignment might have given Amelia R. Lowther a preference, plaintiff has utterly failed to prove that the instrument was fraudulent. There appears to be no dispute that Amelia R. Lowther was a creditor of Lowther Bros., and that the books of the firm showed that moneys were received by them for and on her account, and that a promissory note had been given to her by Charles S. Lowther and indorsed by Clarence L. Lowther in the sum of $8,429.94, and was unpaid at the time of the assignment to her of the rents to become due under the Burns lease. As to the defendant Christopher M. Lowther, the Appellate Division, by its opinion, having held that Clarence L. Lowther had no interest in the partnership assets after January 24, 1903, was justified in entering into partnership with Charles S. Lowther, and therefore cannot be required to account in this proceeding. Whatever moneys he received, either as receiver or as partner of Charles S. Lowther, he has accounted for. Plaintiff has utterly failed to make out such a case as would warrant this court in finding that the several conveyances and assignments are fraudulent.

Complaint dismissed upon the merits. Submit findings.

---

(53 Misc. Rep. 97)

COMMERCIAL NAT. BANK OF CHICAGO v. SLOMAN et al.

(Supreme Court, Trial Term, New York County. February 5, 1907.)

JUDGMENT—RES JUDICATA.

A judgment for defendants in an action against certain shipowners on a note given without authority by a captain of a steamship belonging to defendants, on which note he received money, which he used for present and future supplies for his ship and to pay debts which had been incurred and which had, by necessity, to be paid to enable the ship to leave the

port, and of which the shipowners received the benefit, was not res judi-
cata, in a subsequent action for money had and received, of the liability
of the shipowners for the amount of money paid to the captain.

Action by the Commercial National Bank of Chicago against Carl
Broedermann Sloman and another. Motions to dismiss complaint and
set aside verdict for plaintiff. Denied.

Wing, Putnam & Burlington, for the motion.
Curtis, Mallet, Prevost & Colt, opposed.

SEABURY, J. The plaintiff in this action seeks to recover from the
defendants the sum of $8,087.23. In November, 1902, the steamship
Lugano, of which the defendants were the owners, was put on berth
with Baccich & Clement, shipbrokers at New Orleans. The steamship
Lugano was a German vessel, sailing under the German flag, and while
at New Orleans, loading a cargo for Antwerp, incurred certain expenses
and disbursements for port charges, supplies, and services. On the
morning of November 24th, when the steamship Lugano was about to
sail, Baccich & Clement presented to the master of the vessel a state-
ment of account, stating the details and total amount of these expenses.
All of these expenses at that time remained unpaid, except some small
items that did not aggregate more than $205.43, which latter amount
had been advanced by Baccich & Clement. To provide for the pay-
ment of the amount due, the captain of the Lugano drew to his own
order and indorsed in blank a note, which provided that:

"Five days after arrival (or upon collection of the freight if sooner made) of
the German steamship Lugano under my command at the port of Antwerp,
Belgium, or at any other at which the voyage might terminate, I promise to pay
to the order of myself the sum of sixteen hundred and seventy-three 10-2
pounds British sterling, in approved bankers' demand bills on London, for val-
ue received, for necessary disbursements owed by my vessel at this port."

After signing and indorsing the note in the manner indicated, it was
delivered to Baccich & Clement. Baccich & Clement, after receiving
the note, insured it payable to themselves, and on the same day de-
livered it to the representative of the Commercial National Bank of
Chicago, the plaintiff in this action, from whom Baccich & Clement
received $8,087.23. Out of this sum Baccich & Clement paid the
expenses shown in the statement of account referred to, and their own
compensation, and sent the receipts for these payments to the defend-
ants. The plaintiff indorsed the note and sent it to the Banque Cen-
trale of Antwerp for collection, and the Banque Centrale, pursuant to
the plaintiff's authority, brought suit on the note in the commercial
court of Antwerp. The suit was brought against the captain or master
of the Lugano in his representative capacity, and the defendants in
this action.

The commercial court of Antwerp was a court of competent juris-
diction in respect to the subject-matter of the action, and rendered
judgment in favor of the defendants in that action. The judgment
of the commercial court was founded on the fact that under the German
Commercial Maritime Code a master of a German ship has no au-
thority in his capacity as master to make a note or draft. See section
529 of the German Commercial Maritime Code; Arnold's English

Translation of the Code, at page 14. These facts appearing without dispute upon the trial of this action the court reserved decision upon the defendants' motion to dismiss the complaint, directed a verdict for the plaintiff for the amount claimed, and reserved decision upon the motion of the defendants to set aside the verdict.

The question to be determined here is whether the judgment of the commercial court of Antwerp is res adjudicata in this action. In this connection it must be borne in mind that the present action is to recover the moneys which the defendants received through their agent from the plaintiff, and is not based upon the master's note. The test by which this question is to be determined is whether the same evidence which could have been offered in support of the previous action would maintain this action. If so, then the former judgment is a bar to the prosecution of this action. If not, then no reason exists why the plaintiff should not have judgment upon his present complaint. That this is the principal test to be applied in determining this question was early asserted and has been consistently maintained. In Snider & Van Vechten v. Croy, 2 Johns. 227, Kent, C. J., held that the test to know whether a verdict and judgment in a former action is a bar is whether the same evidence will support both actions. The courts of this state have repeatedly reasserted this rule. Stowell v. Chamberlain, 60 N. Y. 272; Belden v. State, 103 N. Y. 1, 8 N. E. 363; Marsh v. Masterton, 101 N. Y. 401, 5 N. E. 59. The same rule has also been declared in other jurisdictions (Rossman v. Tilleny, 80 Minn. 160, 83 N. W. 42, 81 Am. St. Rep. 247; Geary v. Bangs, 138 Ill. 77, 27 N. E. 462; Buddress v. Schafer, 12 Wash. 310, 41 Pac. 43; Jones v. Fales, 4 Mass. 245, 255; Taylor v. Indiana Paper Co., 64 Ill. App. 339; Lindell v. Liggett, 1 Mo. 432, 14 Am. Dec. 298), and by text-writers (2 Black on Judgments, §§ 723, 733; Freeman on Judgments, § 259). The application of this test to the facts of the present action shows that the former judgment is not a bar. The cause of action sued upon here is not identical with the cause of action sued upon in the Belgium court, and the evidence which would support a recovery in an action for money had and received would not support an action on the note.

Although it appears that under the German law, to which the Belgium court gave effect, the master was not authorized to give the note in question, it does not necessarily follow that he was without power to borrow money at New Orleans as the agent of the defendants. Under the facts and circumstances shown to have existed in this case, the master had authority to bind his principals for the money the plaintiff advanced. The Wyandotte (D. C.) 136 Fed. 470, affirmed (C. C. A.) 145 Fed. 321; McCready v. Thorn, 51 N. Y. 454; Chase v. McLean, 130 N. Y. 529, 29 N. E. 986. In contracting the debts for the present and future necessary supplies of the ship, and in borrowing the money to pay the debts that had been incurred and which must have been paid to enable his ship to clear the port of New Orleans, the master was acting within the scope of his authority. The plaintiff having advanced the money to the agent of the defendants, and the defendants having received the benefit of it, the plaintiff may recover the money, notwithstanding the fact that the defendants' agent gave the plaintiff a void

note as a means of payment for such advances.  By receiving the void note the plaintiff did not forfeit his right to recover upon the original debt, and its delivery did not impair the defendants' obligation to pay the debt which they had contracted.  It is true that the means or method by which the defendants' agent attempted to pay the debt was declared by the Belgium court to be illegal, but the original obligation was lawful.  In Hoag v. Town of Greenwich, 133 N. Y. 152, 30 N. E. 842, the court, considering the case of a town sued for money borrowed for which it had illegally issued bonds, said:

"We may concede that for such reason the four bonds were void as bonds, as vouchers or securities; but it does not at all follow that the loan was void, that the borrowing was unlawful, that the lender lost his money, and the town was at liberty to perpetrate a disgraceful robbery by means of the fault or mistake of its own agents.  Treating the four bonds as void, we are required to dismiss them from the transaction, but not to repudiate the transaction itself.  They were unlawful incidents of a perfectly lawful transaction, and may be disregarded, while the transaction stands."  Louisiana v. Wood, 102 U. S. 294, 26 L. Ed. 153; Bangor Sav. Bank v. City of Stillwater (C. C.) 49 Fed. 721.

The money advanced inured to the benefit of the defendants, and there is no principle of justice which they can invoke which will justify them in withholding payment from the plaintiff who advanced the money to them.

The motions to dismiss the complaint and set aside the verdict are denied.